CHRISTOPHER J. PRENAVEAU *vs.* SARAH R. PRENAVEAU.

No. 10-P-1608.

Norfolk. May 6, 2011. - March 26, 2012.

Present: MILLS, SIKORA, & RUBIN, JJ.

*Divorce and Separation,* Child custody, Findings, Division of property. *Parent and Child,* Custody. *Minor,* Custody. *Probate Court,* Custody of child.

Discussion of the standard of review for custody determinations involving the relocation of children from Massachusetts [486-487], and discussion of the criteria to consider in the determining the child's best interests in such a case [487-489].

This court vacated an amended custody determination by a judge of the Probate and Family Court, in which he reinstated the transfer of the children's residence from the mother's home in Massachusetts to the father's home in New Hampshire, where the judge's findings did not add up to sufficient support for his determination that there had been a pattern of wilful exclusion by the mother of the father's involvement in the lives of children grave enough to override the value of continuity and to require removal of the children from their primary residence; where the record did not demonstrate the superiority of the children's welfare in New Hampshire; and where the judge's custody order failed to accomplish his stated goal of reducing the amount of travel between New Hampshire and Massachusetts or give adequate consideration to alternative measures of residence and communication recommended by the guardian ad litem. [489-493]

Statement of directions and recommendations to accomplish, on remand, a fair and efficient resolution of a custody dispute. [493-494]

In a divorce matter, the probate judge did not err in his disposition of the funds in the mother's retirement account, as valued at the time of the original judgment and without regard to any subsequent diminution in value of the fund by the mother. [494-496]

In a divorce matter, this court declined to consider a marital property issue that was not preserved by a specific notice of appeal. [496]

COMPLAINT for divorce filed in the Norfolk Division of the Probate and Family Court Department on March 13, 2006.

Following review by this court, 75 Mass. App. Ct. 131 (2009), further proceedings were had before *Robert W. Langlois,* J.

*Robert J. DiLibero* (*Lisa DeBrosse Johnson* with him) for the mother.

*Donald J. Kaiser* for the father.

Sikora, J. This appeal presents a further chapter in the contest of divorcing parents over custody of their two young children and over the proper division of the assets of their marriage. In the prior appeal, *Prenaveau* v. *Prenaveau*, 75 Mass. App. Ct. 131 (2009) (*Prenaveau I*), this court vacated portions of a judgment of divorce nisi by which a judge of the Probate and Family Court effectively transferred the two children from the residence of the mother in Stoughton, where the parties had lived while married, to the residence of the father at his new home in New Hampshire. By remand, the court in *Prenaveau I* called on the probate judge to reassess the grounds for those orders in the light of the governing case law and of additional evidence and fact finding. In particular the remand sought the specification of "compelling reasons" or "distinct advantages" for the relocation of the children, the consideration of "reasonably available alternative arrangements," and an evaluation of the feasibility of joint custody by parents separated by geographical distance and residual hostility. *Id.* at 141-144. Finally, in *Prenaveau I*, the court also reversed the portion of the judgment related to property division and asked for greater explanation of the division of the marital assets. *Id.* at 147-149.

The probate judge thereafter conducted five days of additional trial and drafted commendably detailed supplemental findings, reasoning, and final orders. The resulting amended judgment reinstated the transfer of the children's residence from the home of the mother to that of the father and furnished an explanation for the property division. For the following reasons, we vacate the portion of the amended judgment awarding primary residence of the children to the father; we affirm the portion of the judgment allocating the marital assets.

*Background.* 1. *History.* The narration in *Prenaveau I* provides a detailed account of events to the time of the first trial decision on April 15, 2009. *Id.* at 132-138. A synopsis is useful. The father and mother married in August of 1998 and began residence in Stoughton. Since 1996, the father had worked at PM Associates, Inc., a bookkeeping, accounting, and payroll outsourcing service company founded by the mother's father, Peter Miller, and located in Stoughton. After graduation from

college in 1998, the mother joined PM Associates and subsequently worked there as an accountant and as office manager.

The parties' daughter, Lauren, was born in August of 2003, and their son, Charlie, in April of 2005. As of late 2005, the mother was working long hours and had acquired a forty percent ownership interest in PM Associates. *Prenaveau I, supra* at 132-133. In October or November of that year, the father was investigating a career in police work. He applied to four Massachusetts municipal departments, two Federal agencies, and then successfully to the State police force in his native New Hampshire. *Id.* at 134.

In March of 2006, he began divorce proceedings, and in April he obtained a temporary court order for joint legal and physical custody of the children. *Id.* at 133-134. He was terminated from PM Associates and moved to the neighboring town of Canton. *Ibid.* He resided there with the family's former au pair, Candaliza Vasquez, until August of 2007; at that point they moved to New Hampshire so that the father could begin training at the State police academy. *Id.* at 134.

Also in August, 2007, a judge of the Probate and Family Court altered the temporary order so as to award the mother physical custody and to allow the father to have the children in New Hampshire typically for three weekends of each month (August, 2007, order). *Id.* at 134 & n.3. Upon completion of his police training, the father and Vasquez moved to the central New Hampshire town of Gonic, near Rochester, to comply with the New Hampshire State police departmental requirement of residency in the county of his assigned patrol duty. *Id.* at 135. Gonic lies slightly less than 100 miles but approximately three to three and one-half hours of driving time from Stoughton during conditions of heavy traffic. *Ibid.* The visitation regime established by the August, 2007, order was burdensome for both the parents and the children. *Ibid.*

The custody and marital property issues proceeded to a seven-day trial before a probate judge other than the one who had entered the August, 2007, order. On April 15, 2009, the trial judge entered a judgment of divorce (1) awarding "primary residence" or "principal residence" of the children to the father in New Hampshire, and (2) weekend visitation rights (three per

month) to the mother. *Id.* at 137-138.[1,2] The judgment required the immediate relocation of the children from Stoughton to Gonic. The daughter completed the final six weeks of kindergarten at a new school and the son the final weeks of preschool classes in New Hampshire.

A single justice of this court converted the mother's petition for a stay to an expedited appeal to be briefed and heard before the beginning of the new school year in September of 2009. *Id.* at 138. This court's resulting opinion and order reversed the portions of the judgment authorizing removal of the children from Massachusetts, ordering the transfer of the children to the residence of the father, and dividing the marital estate. The children had spent the period of mid-April through late August in New Hampshire. The appellate order directed their return to Stoughton on August 31, 2009, in time for the start of the school year. *Id.* at 150.

*2. Remand phase of trial.* In preparation for additional fact finding, the judge appointed as the remand GAL attorney David Aptaker, a practitioner, instructor, and writer with more than twenty years' experience in the area of family law. At the conclusion of his investigation,[3] he submitted an extensive written

---

[1] At both this first phase of trial and upon remand, discussed below, the judge avoided use of the term "physical custody" in preference for "parenting plan" and "principal residence." See *Prenaveau I*, 75 Mass. App. Ct. at 137 & n.7, 141.

In the rationale at the conclusion of the remand phase, the probate judge explained that "the parties were granted joint legal custody and, rather than a grant of 'sole,' 'primary,' or 'shared physical custody,' the parties were instead ordered to comply with a parenting schedule . . . designed to allow the children to reside primarily with Father, in Gonic, New Hampshire, while giving the parents 'relatively equal parenting time' with the children."

As we shall discuss below, the resulting amended judgment does not provide "relatively equal parenting time" or show a meaningful difference between "principal" or "primary" residence and primary physical custody.

[2] In preparation for the original trial, the judge appointed clinical psychologist David Shumaker as guardian ad litem (GAL) to evaluate the merits of the custody issue. Dr. Shumaker reported the parents to be hostile toward each other but well bonded with, and supportive of, their children. He recommended their ongoing "co-parenting" of the children but abstained from any preference of one over the other as a custodian. As the court points out in *Prenaveau I*, he conducted his investigation before the father moved to New Hampshire. *Prenaveau I*, 75 Mass. App. Ct. at 135-137.

[3] The remand GAL visited each parent at home during his or her custody of

report and at trial submitted to examination by counsel for both parents and by the judge. Other witnesses included the father, the mother, the mother's father, the superintendent of the Stoughton public schools, and two opposing experts retained to offer valuations of disputed marital property.

The remand GAL concluded in both his written report (admitted as a trial exhibit) and in his testimony that each parent engaged attentively and comfortably with each child; that each child felt a strong bond with both parents; and that both parents could furnish a nurturing home. The father and Vasquez had now married. The GAL found the parents approximately equal in their child-rearing qualities.

> "In this case, the father is a nurturing, involved, attentive parent who now has a partner who also has a strong history of caring for those children. These are all positives. However, the mother has also clearly established a lengthy track record of paying attention to and attending to the needs of the children. She has relied on extended family and paid caregivers to fill some of the gaps caused by her need to be available to earn a livelihood and not be ever present for her children. Mother has covered those time periods in ways which are perfectly suited to promoting the children's welfare. The benefit of the father being part of a couple is not significantly more favorable to the children's best interest than the fact that the mother is a mother, and vice versa. What is important is that each of these parents now prioritizes their hands-on involvement in the care of their children in ways they did not do during the marriage . . . ."

Under questioning from each parent's counsel and from the judge, the remand GAL reasserted the parity of the parents. He found their qualifications "close to a tie." "[B]oth parents are capable of parenting these children . . . . I think that one is not markedly superior to the other . . . ."[4] In his view, both had

the children, met separately with each at his office, spoke with Dr. Shumaker, the original GAL, and interviewed five other "collateral" individuals designated by the parties as knowledgeable about custodial questions.

[4] The remand GAL found also the public school systems available in Stoughton and Gonic-Rochester both "above average."

approximately equal time available from work and for the children.[5]

As a solution for the custody contest, the remand GAL recommended a parenting plan under which the children would reside during the school year with their mother in Stoughton and during the summer vacation months with their father in New Hampshire. The noncustodial parent would have visitation rights (three weekends per month) during those periods. The parents would divide the major school-year vacation week periods so that the children spent the bulk of the Christmas and February vacations with the father and the April vacation with the mother. In addition, he specifically recommended the allocation of custody for secular holidays (including Mother's and Father's Days), religious holidays and observances, and miscellaneous special occasions. For particular assistance, he suggested the regular use of video visitations (e.g., "Skyping") between the children and the away parent and the use of a parenting communications coordinator to buffer friction between the mother and father.[6,7,8] The evidence closed on May 17, 2010.

On June 30, 2010, the judge entered supplemental findings of

---

[5]The remand GAL credited the mother's assertion that she had reduced her hours at PM Associates to approximately thirty per week.

[6]While he praised each parent's care and dedication to the children, the remand GAL criticized both for their persistent hostility toward each other and its interference, actual and potential, with the collaborative exchange of information and scheduling for the benefit of the children.

[7]The remand GAL acknowledged that his conclusions followed his understanding of the Appeals Court's reasoning in *Prenaveau I, supra*. He interpreted the opinion to place a burden of persuasion on the father to demonstrate that the benefits of the relocation of the children to New Hampshire would outweigh any detrimental disruption; and that a "more or less equal[]" parenting capability required their continued residence in Massachusetts. Under that standard, he found no compelling reasons for relocation of the children from Stoughton to Gonic.

[8]The remand GAL testified that he had observed the children in the New Hampshire home with the father and Vasquez and that the children seemed unfazed by any problems latent in Vasquez's position as their father's wife, most probably because they had always known Vasquez as an in-house caregiver. He testified,

> "What's remarkable, though, is the kids by all reports are doing quite well. They're remarkable kids. They don't seem heavily damaged. I don't expect [that after] two or three more years of this we'll be able to say the same thing but right now they're pretty resilient kids."

fact and an amended judgment and rationale. He ordered the transfer of the children's "primary residence" from Stoughton to Gonic, permitted the mother three weekends of visitation per month, and prescribed equally shared parenting time during the summer months by means of nine-day rotations between the mother and father. He divided school vacation weeks evenly (each parent received one-half of the Christmas recess; the father received the vacation week in February, and the mother the week in April). The amended judgment included detailed directions for the parents' cooperative sharing of information about the children's school status and activities, their health and medical treatment, recreational events, the management of holidays both secular and religious, and other contingencies.

The essence of the judge's reasoning was "that the children's best interests *clearly* require that they reside primarily with Father as he will continue to promote Mother's involvement in all aspects of the children's lives to a far greater degree than would Mother with regard to Father's involvement" (emphasis original). He found that the four-and-one-half-month period of the children's residence in New Hampshire in 2009 had "work[ed] well for the children and the parties" and furnished "the only solution which enabled both parties to be involved in all aspects of the children's lives." The greater degree of the father's cooperation toward involvement of the mother in the children's lives provided the justification for the relocation of the children to New Hampshire.[9,10]

As to the marital estate, the amended judgment reinstated the original provision entitling the father to distribution of one-half the value of the mother's retirement account as of the date of the original divorce judgment nisi, April 15, 2009 ($32,937.50), but not to any share of her forty percent ownership interest of

[9]In the words of the judge, "The 'uprooting' of the children has been demonstrated to have been anything but difficult for them, as they flourished while the April 2009 parenting plan was in effect. Indeed GAL Aptaker found the children to be remarkably well-adjusted, due in great part to their resilience and adaptability when faced with change. The move did not impair Mother's parenting to the detriment of the children's interests, as she was able to be fully involved in their lives."

[10]In conjunction with the transfer of the children to the father, the judge ordered the mother to furnish weekly child support of $300.

PM Associates (valued at $178,325) as of the conclusion of the marriage. The mother appeals from the order governing her individual retirement account. The husband proposes a cross-appeal from the order denying him any share of the PM Associates ownership interest.

A single justice of this court has stayed the contested orders so that the children have remained in Stoughton during the pendency of the appeal. We address first the question of primary residence of the children, and then the disputed elements of the distribution of the marital estate.

*Analysis.* 1. *Standard of review for custody determination.* The amended judgment relocating the children from Massachusetts to New Hampshire must comply with the provision of G. L. c. 208, § 30, prohibiting the unconsented-to removal of minor children of divorced parents who (the children) are natives of, or have resided in, the Commonwealth for five years or more, except by court order "upon cause shown." See *Prenaveau I, supra* at 139. "Cause shown" requires removal to serve the best interests of the child. See *Yannas* v. *Frondistou-Yannas*, 395 Mass. 704, 711 (1985); *Mason* v. *Coleman*, 447 Mass. 177, 178 (2006). The burden of proving the grounds for relocation falls on the parent proposing it. See *Mason* v. *Coleman, supra* at 183-184. The appellate court reviews the trial judge's determination of a child's best interests for clear error of fact finding and abuse of discretion. *Id.* at 184. See *Rosenberg* v. *Merida*, 428 Mass. 182, 191 (1998); *Prindle* v. *Fisk*, 2 Mass. App. Ct. 843, 844 (1974). The reviewing court treats the probate judge's custody determination with deference. However, an error of law apparent on the record, or the absence of evidence in support of findings, or the failure of the findings to support the judge's orders will constitute "an abuse of discretion" and require reversal. See *Freedman* v. *Freedman*, 49 Mass. App. Ct. 519, 521 (2000); *Rosenthal* v. *Maney*, 51 Mass. App. Ct. 257, 265 (2001).[11] In this instance, the court in *Prenaveau I, supra* at 143, directed the trial judge's discretion to the identification of

---

[11]As this case illustrates, the division of custody of children between two competent parents places solomonic demands on the discretion of the conscientious probate judge. In this sensitive and complex setting, we attempt to apply a standard of review more exact than some of the older roughhewn formulations of abuse of discretion, e.g., the standard "that no conscientious judge,

"distinct advantages" of the children's relocation, to an assessment of "reasonably available alternative arrangements" instead of removal, and to reconsideration of the viability of a shared custody arrangement.

The judge's preference for the concept of primary or principal residence in a parenting plan rather than one of shared legal and shared physical custody does not fit squarely within Massachusetts case law.[12] For the practical purposes of this case, we do not find a meaningful distinction between primary or principal residence and shared physical custody, on the one hand, and designation of a principal residence with one parent, on the other. The undisputed facts establish an instance of removal of children from the Commonwealth to a primary or principal residence in New Hampshire. *Id.* at 142-143. As in *Prenaveau I*, we therefore analyze the amended judgment and rationale under the standard of *Mason* v. *Coleman*, 447 Mass. at 181-186.

2. *Custodial criteria.* Several criteria of the child's best interests have emerged from the major precedents on removal and custody. A long-established guideline is the objective of stability and continuity in the life of the child. The language of the 1965 decision of *Jones* v. *Jones*, 349 Mass. 259, 264 (1965), is the frequently cited expression of that standard: "The uprooting of a child of tender years . . . should be done only for compelling reasons." The decision of *Custody of Kali*, 439 Mass. 834, 844 (2003) (a custody case without the issue of removal) emphasized "the benefits of stability and continuity":

"In most cases, . . . if the child has been living with one

---

acting intelligently, could honestly have taken the view expressed by him," *Davis* v. *Boston Elevated Ry.*, 235 Mass. 482, 502 (1920); or that abuse must consist of "whimsy, caprice, or arbitrary or idiosyncratic notions." *Bucchiere* v. *New England Tel & Tel. Co.*, 396 Mass. 639, 642 (1986). For the same language, see *Boulter-Hedley* v. *Boulter*, 429 Mass. 808, 811 (1999).

[12]For the concept of parenting time rather than custodial time, the judge cited dicta in *Custody of Kali*, 439 Mass. 834, 842-843 (2003), and the Supreme Judicial Court's reference to the American Law Institute's Principles of the Law of Family Dissolution § 2.08(1) (2002), recommending an allocation of custodial time in accordance with the degree of each parent's predivorce caretaking time with the children. However, both the Supreme Judicial Court and the American Law Institute maintained the terms "custody" and "custodial." The Supreme Judicial Court noted, but neither accepted nor rejected, the recommendation as a rule or guideline for Massachusetts law. *Custody of Kali, supra.*

parent for some time, the child's needs are being adequately met under that parent's care, and that parent is capable of continuing to care for the child, it is not in the child's best interests to disrupt that successful arrangement. Rather, it is in the child's best interests to preserve it. Belief that the other parent might be a little better in some areas ought not suffice to disrupt a child's satisfactory home life with the caretaker parent."[13]

A second criterion is the maximum involvement and participation of both parents of a joint custody arrangement in the lives of the children. "Where physical custody is shared and neither parent has a clear majority of custodial responsibility, the child's interests will typically 'favor protection of the child's relationship with both parents because both are, in a real sense, primary to the child's development.' " *Mason* v. *Coleman, supra* at 185 (a removal case), quoting from Wallerstein, To Move or Not to Move: Psychological and Legal Considerations in the Relocation of Children Following Divorce, 30 Fam. L.Q. 305, 318 (1996).

A third objective visible in the cases is the reduction of disruptive shuttle transport of children between custodial parents. See *Custody of Kali, supra* at 846 ("Because of the temporary order, by the time the judge rendered his findings, the benefits of the stability and continuity that should have been a major focus of the judge's analysis were eviscerated by the two years of shuttling Kali from one parent to the other on a weekly basis"); *Mason* v. *Coleman, supra* at 185-186 (judge must consider "travel time between households" as a factor affecting parental performance and children's development); *Prenaveau I, supra* at 137 ("During the proceedings, the judge expressed his view

---

[13]Another passage stresses the same point:

"If the parenting arrangement in which a child has lived is satisfactory and is reasonably capable of preservation, it is ordinarily in the child's best interests to maintain that arrangement, and contrary to the child's best interest[s] to disrupt it. Stability is itself of enormous benefit to a child, and any unnecessary tampering with the status quo simply increases the risk of harm to the child."

*Custody of Kali, supra* at 843.

that the constant shuttling of the children between Stoughton and Gonic was 'absurd' "). The reduction of shuttling may constitute a corollary of the need for stability and continuity or may amount to an independent consideration. It can inflict on the children and parents substantial logistics, the consumption of time, emotion, and expense, and the occasion for friction.[14]

3. *Soundness of the amended custody determination.* In light of these criteria and the cumulative evidence from both the original and remand phases of trial, we measure the soundness of the amended custody determination.

It is undisputed that, as of the time of the amended judgment date June 30, 2010, the children had spent almost the entirety of their lives in Stoughton, except for the April 15 to August 31, 2009, interim in Gonic. See *Prenaveau I, supra* at 141-142. Lauren had completed first grade; Charlie had completed preschool (from which the mother or his grandfather would pick him up) and was about to begin kindergarten. Their maternal grandparents lived in the adjacent town and furnished financial and recreational benefits. The maternal grandmother saw them two to three times per week. *Prenaveau I, supra* at 141 n.13. They had accumulated friends in school and preschool. Lauren had participated in dance and gymnastics classes. The remand GAL had found their home life entirely satisfactory. The judge did not contradict that determination.

a. *Removal reasoning: shared parental involvement.* The judge cited the following evidence as proof of the mother's exclusion or obstruction of the father's participation in the children's lives: (i) her failure to inform him of the employment of a social worker for therapy for the children after their return from New Hampshire; (ii) her use in February, 2008, and January, 2009, of her choice of weekends (under the August, 2007, order) to keep the children in Stoughton for three consecutive weeks; (iii) her failure (before the trial decision of April 15, 2009) to inform the father of upcoming events at Lauren's school, such as parent-teacher conferences; (iv) her subsequent notification of the father in September, 2008, of the results of Lauren's

---

[14]These more prominent criteria are not exclusive indicators of the children's best interests. The circumstances of each case may generate other particular factors. See *Charara* v. *Yatim*, 78 Mass. App. Ct. 325, 334-336 (2010).

annual physical examination rather than prior notification of its date, as required by the existing order; (v) her failure to inform the father of the Appeals Court's vacation of the transfer of custody to him when he picked them up in Stoughton on the day of its issuance, August 28, 2009; (vi) her hard bargaining or unreasonable scheduling requests for the holiday, vacation, and summer periods left open by the August, 2007, order; and (vii) her failure to make the children available for weekday telephone contact. More generally, the judge found that the remand GAL had "determined that [the husband] was generally better about keeping [the wife] informed than vice versa."

The record shows the following. The remand GAL did not make a determination that the father generally kept the mother better informed than vice versa. He did observe particular lapses of communication by both parents, but he made no general classification of fault. He credited the father with effective notification during their New Hampshire residency of the children's school progress, doctors' appointments, and recreational activities.

The uncontradicted testimony of the remand GAL sheds the following light on the other factors. (i) As to the social worker's therapy, the mother informed the father on October 14 and 15, 2009, about six weeks after the children's return to Stoughton, of the engagement of the social worker, a person whom the parents had together previously employed for the children during the first half of 2006. (ii) The August, 2007, order (by reason of the number of weekends per calender month) permitted the mother occasionally to keep the children in Stoughton for three consecutive weekends; her two uses of that opportunity did not violate the order. (iii) After the children's return to Stoughton for the beginning of the 2009-2010 school year, the mother did in fact keep the father informed of their progress, school events, and the identities of school contact personnel. (iv) The mother should have informed the father in advance of Lauren's annual physical examination so that he could attend. (v) The mother did fail to inform the father immediately of the August 28, 2009, Appeals Court decision.[15] (vi) Her hard bargaining and scheduling proposals over open periods and dates

---

[15]With regard to this factor, we note that the father was represented by

in the August, 2007 order are debatable. (vii) The mother did fail to make the children available for weekday telephone contact.

If we consider these subsidiary findings not clearly erroneous, we must still assess their sufficiency as proof of violation of a legal standard. "It is axiomatic that an appellate court accepts the subsidiary findings of fact of a trial judge unless they are clearly erroneous. To what ultimate legal determination those subsidiary facts add up, however, is a question of law." (Citations omitted.) *Matter of Jane A.*, 36 Mass. App. Ct. 236, 239 (1994). These incidents do not establish a pattern of wilful exclusion of involvement in the lives of children by one parent of another grave enough to override the value of continuity and to require removal of the children from their primary residence.[16]

b. *Removal reasoning: children's New Hampshire experience.* The judge characterized the children's four and one-half months in Gonic as a completely successful period in which they flourished. That assessment requires some caution. The remand GAL did not investigate that period; he construed his appointment to cover only the span after the return of the children to Stoughton. The New Hampshire interim was relatively brief. Only six weeks of it included school time. Yet the father testified and the judge repeated that Lauren was located at "the top of her class" in a transitional placement. The father's testimony was the judge's only source of evaluation. The judge was entitled to believe him. However, that testimony and the remainder of

counsel throughout the proceeding and that counsel would properly inform him of developments in the case.

[16]Our circumstances contrast sharply with those justifying the loss of custody in the most analogous precedent, *Custody of Zia*, 50 Mass. App. Ct. 237, 240 (2000):

"Notwithstanding the positive attributes of the mother's care of the child, the judge had serious concerns about the mother's judgment, parenting abilities, and interactions with the father. The judge found that the mother has 'dismissed the need of [the child] for a [f]ather' and has 'thwarted his joint legal custody at every turn.' 'She has denied him information about and input into the most important decisions and events concerning the child: medical issues, hospitalizations, attendance at pre-school, selection of pre-school educational programs, all to the detriment of [the child].' The judge found that the mother believes that she alone can make important decisions in the child's life."

(Footnote omitted.)

the pertinent information in the record would not demonstrate the superiority of the children's welfare in Gonic, but rather its parity with their status in Stoughton.

c. *Removal reasoning: shuttle reduction.* One of the benefits implicit in the judge's New Hampshire placement after remand was a potential reduction in shuttle travel between Gonic and Stoughton. As before, the mother would be entitled to have the children for three weekend periods per month and for alternating nine-day periods during the summer. At her option, she could retain the children for three-day weekends if she housed them at her family's summer home in Wakefield, New Hampshire, a one-half hour's drive from Gonic. See *Prenaveau I,* *supra* at 138. That arrangement replaced three-hour trips with shorter one-half hour trips, but still left the mother with the option of the longer journey to Stoughton and, as the court pointed out in *Prenaveau I,* with access and participation in the children's lives considerably inferior to the father's.[17]

d. *Available alternatives.* The judge's final reasoning and the amended judgment substantially resemble the original judgment. He did not assess reasonable alternative arrangements available in place of a transfer of a satisfactory primary residence with the mother. See *Prenaveau I, supra* at 143. For problems of notification and information between the parents, court orders could compel timely communication on specific subjects. They might also reduce weekend shuttling during the school year. In particular, the establishment of more sustained periods of residence with the alternate parent during the summer and during the school year vacation weeks could enlarge the involvement of that parent with the children.

In this instance, the parenting plan proposed by the GAL would much more closely fit the standards of sound discretion

---

[17] "Since the children will be attending school during the week, she will be able to have them on the Thursday and Sunday nights set out in the judgment only if she spends those nights in New Hampshire (either at a motel or at her parents' vacation house in Wakefield, one-half hour's drive from Gonic). If one assumes the wife has an ordinary five-day work week, then the order would provide her only four to six nights per month with the children."

*Prenaveau I, supra* at 138.

favored by the evidence in this case: stability and continuity in one competent parent's existing home; consistent and meaningful involvement with the children by designated periods of residence with the other parent; minimized commuting; and maximized communication. That plan would maintain the children with their mother in Stoughton during the school year; transfer them to their father for the summer months and the majority of the school-year vacation periods; order the parents to exchange specific information in a timely manner; and direct the parents to establish a system of regular telephone and video visitation with the away parent.

e. *Custody conclusion.* We conclude that the judge's findings do not add up to sufficient support for his custody order. His reasoning does not overcome the law's preference for continuity; it does not undermine the remand GAL's finding that each parent furnishes the children a nurturing home. That equivalence militates against the removal of primary residence from one parent to the other and from one community in the Commonwealth to another outside it. The mother's less diligent involvement of the father in the children's activities does not amount to obstruction overriding the interest of their stable location in Stoughton. Nor do the findings give adequate consideration to the alternative measures of residence and communication recommended by the GAL for the participation of both parents in the children's development. Finally, the resulting parenting schedule fails to reduce the shuttle regimen. In these circumstances the order for removal constitutes an abuse of discretion. See *Freedman* v. *Freedman*, 49 Mass. App. Ct. at 521; *Rosenthal* v. *Maney*, 51 Mass. App. Ct. at 265.

4. *Custody disposition.* Regrettably we must remand the case for further proceedings, but we do so with directions and recommendations for a fair and efficient solution of custody. Several reasons cause us to state them in detail. First, they implement the well-founded findings and recommendations of the remand GAL and his accurate grasp of the reasoning in *Prenaveau I*. They also retain many of the trial judge's prudent and detailed provisions for parental cooperation. Second, they rest on a now exhaustive record of evidence, findings, analysis, and orders from two trial proceedings. The record is comprehensive. We

see no need for additional findings and rulings. Prior proceedings have explored all material elements of the case. Finally, the litigation is ripe for a conclusion. It has extended through almost six years and extracted time, effort, expense, and tribulation from both parties. The time has come to end the uncertainty experienced by the parents and perhaps sensed by the children.[18]

We direct the Probate and Family Court to enter final judgment and orders accomplishing the following. (1) Physical custody of the children during the school year shall remain with the mother in Stoughton. During that period the father shall be entitled to visitation with the children every other weekend. (2) During the summer school vacation, the father shall be entitled to physical custody of the children. The mother shall be entitled to visitation with the children on three weekends of her choice to be selected in advance of the summer vacation period. (3)(a) During the Christmas school vacation the father shall be entitled to custody of the children for eight consecutive days; (b) during the February school vacation for four consecutive days; (c) during the April school vacation for seven consecutive days. With parental cooperation, this remedial plan attempts to provide the children with a stable rhythm of extended residence and involvement with both parents and with some reduction of shuttle travel and piecemeal visits.[19]

5. *Marital property issues.* The parties dispute the disposition of two property interests: the mother's retirement account and

---

[18]At oral argument counsel observed the need for an end to the litigation, now in its sixth year. We agree.

[19]Any actions for enforcement or modification of these terms shall proceed in the Probate and Family Court. See *Kennedy* v. *Kennedy*, 400 Mass. 272, 275-276 (1987).

From the work of both the original and remand GALs and the trial judge, the following measures emerge as sound elements of a custody plan. We recommend their maintenance or adoption, but we leave final orders of implementation to the discretion of the trial court. (1) The trial judge's detailed orders 1(k) through 1(o) addressing, inter alia, the subjects of communication and participation of the parents in the educational, medical, recreational, and general welfare interests of the children show a careful and practical assessment of the evidence. (2) So do the judge's orders concerning the observances of secular and religious holidays, special occasions, recreational events, and contingencies. (3) By shared expenditure, the parents might arrange for regular video visitation between the children and each parent.

By reason of agreement or changed circumstances, the parents remain free

her forty percent ownership of PM Associates. Under the distributive criteria of G. L. c. 208, § 34, we practice restrained review and alter the trial judge's allocations only for clear error or inequity. See *Baccanti* v. *Morton*, 434 Mass. 787, 790, 792 (2001); *Prenaveau I, supra* at 148, and cases cited.

a. *Mother's retirement account.* In the original divorce judgment nisi of April 15, 2009, the judge awarded each party one-half of the funds in the mother's retirement account.[20] During the subsequent remand trial, the mother submitted a financial statement reporting an account balance of $62,000. Later she testified that she had depleted almost the entire balance to pay attorney's fees and living expenses. In the amended judgment, the judge maintained the even split of the value of the account. When the father moved for clarification of its value, the judge ruled that "[t]he proper date of valuation remains the date of the original April 2009 Judgment" and attributed to it a value of $65,875 as of that time. He reasoned that any subsequent diminution of the fund by the mother had violated Supplemental Probate Court Rule 411 (2000), and that therefore "any change in the value of the account due to [her] decision to withdraw funds prematurely . . . remains her responsibility." He specifically disbelieved her testimony that she had used the funds to pay attorney's fees and living expenses.

The mother now contends that the judge should have valued the account as of the June 30, 2010, moment of issuance of the amended and final judgment because she had complied with the terms of Supplemental Probate Court Rule 411 governing the financial conduct of parties during the pendency of a divorce action, specifically its allowance of expenditures for reasonable living expenses and attorney's fees.[21] No separate evidence supported her representation. The judge's credibility finding is

to seek modifications. For particular occasions, they remain free to reach accommodations for each other and for the children.

[20] General Laws c. 208, § 34, includes as an asset divisible in the discretion of the judge "retirement benefits" "accrued during the marriage."

[21] Entitled "Automatic Restraining Order," the rule provides in pertinent part:

> "Neither party shall sell, transfer, encumber, conceal, assign, remove or in any way dispose of any property, real or personal, belonging to or acquired by, either party, except: (a) as required for reasonable expenses

decisive. In a bench trial credibility is "quintessentially the domain of the trial judge [so that his] assessment is close to immune from reversal on appeal except on the most compelling of showings." *Johnston* v. *Johnston*, 38 Mass. App. Ct. 531, 536 (1995). The father shall remain entitled to one-half of the value of the account as an asset accrued during the marital partnership.

b. *Mother's ownership interest in PM Associates.* As part of the rationale for the original judgment of April 15, 2009, the judge found that "the [mother's] 40% interest in PM Associates, Inc., was not, in reality, the product of the marital enterprise as the [mother's] interest therein was, essentially, gifted to her from her father. . . . The intrinsic value of PM Associates, Inc., if any, was, essentially, the result of the long-term efforts of the [mother's] father, Peter Miller." As an element of the amended judgment, the judge reaffirmed the mother's retention of the forty percent interest because "this asset was . . . owned by her prior to the marriage." On appeal the father argues implicitly that the PM Associates ownership interest constitutes a marital asset of which he is entitled to a fifty percent distribution. However, the record does not show that he has preserved this issue by a specific notice of appeal. Consequently, the question is not entitled to review. If we were to reach its merits, we would not conclude that the judge's determination of the asset as a donation from the mother's father rather than a product of the marital partnership comprised either a clearly erroneous finding of fact within the meaning of Mass.R.Dom.Rel.P. 52(a) or an abuse of discretion under the standards of G. L. c. 208, § 34.

6. *Appellate attorney's fees.* The father has requested an award of appellate attorney's fees under authority of G. L. c. 208, § 38. Like the trial judge, we conclude that each party will struggle to meet the substantial fees and costs generated by this long and contentious litigation and that any shifting of

of living; (b) in the ordinary and usual course of business; (c) in the ordinary and usual course of investing; (d) for payment of reasonable attorney's fees and costs in connection with the action; (e) written agreement of both parties; or (f) by Order of the Court."

Supplemental Probate Court Rule 411(a)(1).

those payments would unfairly oppress the burdened party. Each side will bear its own fees and costs.

*Conclusion.* (1) Paragraph 1 of the amended judgment of divorce dated June 30, 2010, is vacated and shall be replaced by a provision awarding primary physical custody of the children to the mother in Massachusetts during the school year, and to the father during the school summer vacation months and during certain school weekly vacation periods. The new provision shall incorporate the custody and visitation details enumerated in section 4 of this opinion. (2) As the result of the transfer of school year custody from the father to the mother, paragraph 3 of the amended judgment of divorce is vacated, and the mother shall be entitled to reconsideration of the order for her payment of child support at the rate of $300 per week. (3) The amended judgment of divorce is otherwise affirmed. (4) Each party shall bear his or her own fees and costs of litigation. (5) The Probate and Family Court shall remain free to order adjustments and accommodations in practical implementation of these provisions.

*So ordered.*