NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-736

MARMIK, LLC, & others[1]

vs.

RALPH PACKER, JR., & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, Marmik, LLC; Vineyard Markets, Inc.; Mark

Wallace; and Michael Wallace (Marmik or buyers) bought a

property on which a gas station has operated since the 1920s.

As part of the sale, Ralph Packer, Jr., and Cottage City Land

Co., Inc., (Packer or sellers) offered the following guaranty:

> "This letter will confirm our agreement that your [the
> buyers'] obligation to pay for 21E cleanup costs for the
> property will be to pay the first $35,000 worth of cleanup
> costs.  Thereafter, the seller will be responsible for the

---

[1] Vineyard Markets, Inc.; Mark Wallace; and Michael Wallace.

[2] Cottage City Land Co., Inc., which did not join this appeal.  The original complaint also named R.M. Packer Co., Inc., as a defendant.  The trial judge dismissed all claims against R.M. Packer Co., Inc., in a January 9, 2023 order. Though the buyers filed a notice of appeal appealing from "[t]he [c]ourt's [j]udgment dated January 9, 2023," they do not raise the issue of the dismissal in their brief.

costs necessary to satisfy the Massachusetts Department of
Environmental Protection (DEP).  This commitment will
survive the Purchase and Sale Agreement."

After a jury-waived trial, a judge of the Superior Court awarded
the buyers damages for breach of the guaranty in the amount of
$479,202.  Packer appeals, contending the judge applied a
standard that was arbitrary and inconsistent with the evidence
and that the award of damages amounts to unjust enrichment.  In
their cross appeal, the buyers contest so much of the judgment,
and denial of their motion to amend the judgment, as denied
costs they incurred in the assessment of the contamination issue
on the property, prejudgment interest thereon, and to set the
breach at an earlier date.[3]  We affirm.

Background.  Packer owned the property at issue until May
1, 2000.  In the 1990s, the Department of Environmental
Protection (DEP) became aware of petroleum contamination on the
property, and ultimately, in July of 1999, issued a Notice of
Responsibility (NOR) to Cottage City regarding the contamination
on the property.

Mark and Michael Wallace (Wallaces) are brothers and were
business partners in Marmik.  They operated a convenience store

---

[3] Additionally, the buyers alleged one count of nuisance,
one count of trespass, one violation of G. L. c. 93A, and one
count of tortious misrepresentation.  In the same order, the
trial judge dismissed those counts with prejudice.  The buyers
do not appeal from this portion of the judgment.

on the property.[4]  The Wallaces were aware of the contamination; they could see and smell it for themselves.  Sometime around the spring of 2000, they approached Packer to purchase the property.  The parties agreed on a purchase price of $1.3 million.  Packer admits that he, individually, and Cottage City are jointly liable on the guaranty to clean up the property.

In 2005, the DEP issued a NOR to Marmik stating that Marmik was required to remediate the contamination on the property.  The Wallaces informed Packer and Packer retained a licensed site professional (LSP), Dawn Horter, to assess the property.[5]  Based on her analysis of soil and groundwater samples, Horter submitted a remediation plan to the DEP.  Horter's plan would have required the Wallaces to agree to an activity and use limitation (AUL), restricting the property to commercial use.  Although AULs often are imposed on gas stations and the property at the time of sale could be used only for commercial purposes, the Wallaces did not agree to adding an AUL.  Horter stopped all work on the property in 2013 after encountering issues getting

---

[4] An automobile mechanic also leased space in the building.

[5] Horter was the second LSP to review the site.  Around the time of the sale, Packer retained another company to assess the property and develop a report for the DEP.  The DEP found that first report deficient because, while it addressed contamination surrounding the fuel tanks, it did not address possible vertical and horizontal movement of contamination.  Horter agreed that the first LSP attempted to falsely inform the DEP in 2001 that the site was clean.

permission from the town to do excavation work and in getting access to the property.[6]

In June 2015, DEP issued a notice of noncompliance to Marmik requiring it to submit a "[t]emporary or a [p]ermanent solution" by December 31, 2015. The buyers retained a new LSP, Michael Pierdinock, who conducted his own assessment and analysis of contamination on the property. Pierdinock identified four possible options for addressing the contamination on the property. One plan proposed by Pierdinock would have required not only that the buyers accept an AUL on the property, but also that two adjoining property owners subject their own properties to AULs as well. The abutting ice cream shop owner would not accept an AUL, making the plan a "[p]artial [t]emporary [s]olution" that would require continuous monitoring that Pierdinock described as a temporary "band aid solution." Continuous monitoring would have cost $24,000.[7]

_____

[6] The trial judge found insufficient evidence to determine whether the buyers or the sellers were responsible for the access problem. In her order denying the buyers' motion to amend the judgment the judge did note that Horter encountered problems in getting permission from the Wallaces to access the property.

[7] Had the trial judge determined that this satisfied the guaranty, the buyers would therefore not be entitled to any damages because they were responsible for the first $35,000 of cleanup costs.

4

Pierdinock also developed three permanent solutions, each of which would "satisfy the DEP" and eliminate both the need for continuous monitoring and the need for the abutters to agree to an AUL.  After a jury-waived trial,[8] the judge issued a judgment that would provide the buyers reimbursement up to the lowest cost of these three permanent options, option 3.  That option required the buyers to accept imposition of an AUL on their property even though such a limitation was not provided for in the sale contract.[9]

This awarded the buyers damages in the amount of $479,202 for breach of contract, the cost of option 3 minus the $35,000 the buyers agreed to pay in the guaranty.  Packer, unsatisfied with having prevailed in obtaining the lowest cost permanent solution, argues on appeal that the buyers were entitled to be paid only for an option that achieved merely a temporary solution that required continuous monitoring of the property for an indefinite period.

---

[8] The buyers filed the complaint in January 2018 alleging breach of contract and numerous other causes of action and seeking damages to cover the costs of the property cleanup.  The buyers then filed a motion for summary judgment on their claim for breach of contract.  A judge of the Superior Court allowed the motion, leaving the issue of damages for trial.

[9] Option 1 was the most expensive and had a projected cost of $1,060,744; option 2 had a projected cost of $585,372; and option 3 had a projected cost of $514,202.  Neither option 1 nor 2 required an AUL.

The buyers argued in a motion to amend the judgment, and argue on appeal, that they were entitled to an additional $102,917.89 in damages, plus prejudgment interest from June 3, 2015, the alleged date of breach, for the cost of the third LSP, Pierdinock. The trial judge denied that motion. She reasoned that the work Pierdinock did could not

> "be considered to be 'cleanup costs' within the meaning of the [g]uaranty, but rather the costs preliminary to determining how much the actual clean up would cost. Moreover, even if they could be deemed to be part of those costs, the evidence was insufficient to support the conclusion that these expenditures were reasonable and necessary."

Elaborating, the judge found that the evidence was insufficient to find that the buyers should be reimbursed for the LSP they selected "without some additional evidence regarding the insufficiency of [Horter's] work and how Pierdinock's work did or did not duplicate it." Accordingly, the buyers failed to demonstrate that those costs were "reasonable and necessary." Because the buyers had not done the cleanup, the order also clarified that "[a]ll that the [c]ourt has decided is that plaintiffs are entitled to be reimbursed up to an amount equaling $479,202."

Discussion. 1. Scope of the guaranty. Packer argues that the evidence presented at trial did not support the award the judge granted the buyers. Specifically, Packer argues that he is liable only for cleanup costs "necessary to satisfy" the DEP

6

and that the evidence at trial showed that the DEP was "satisfied" with the least costly plan, the plan that required continual monitoring of the property. The question is whether Packer's agreed-to obligation to pay "for 21E cleanup costs for the property" (above $35,000) was satisfied if only a temporary solution were achieved. This is a question of contract law, i.e., what the parties intended, not one of whether the evidence of damages was sufficient.[10] See Haverhill v. George Brox, Inc., 47 Mass. App. Ct. 717, 720 (1999).

---

[10] The buyers argue that Packer's argument is a sufficiency argument that has not been preserved because the sellers failed to file a motion for directed verdict or a motion for judgment notwithstanding the verdict. We disagree and, in any event, the "argument is misplaced as it is premised on a jury trial." K & K Dev. v. Andrews, 103 Mass. App. Ct. 338, 343 (2023). See Mass. R. Civ. P. 52 (b), as amended, 423 Mass. 1402 (1996) ("[w]hen findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the trial court an objection to such findings or has made a motion to amend them or a motion for judgment"). Massachusetts Rule of Civil Procedure 52 is largely modeled on Fed. R. Civ. P. 52, which Federal courts have interpreted to not require a party to make a posttrial motion to preserve a sufficiency challenge to a judgment after a jury-waived trial. Federal Ins. Co. v. HPSC, Inc., 480 F.3d 26, 32 (1st Cir. 2007), quoting Colonial Penn Ins. v. Market Planners Ins. Agency, Inc., 157 F.3d 1032, 1036 n.3 (1998) ("nothing indicates that a similar [requirement to move for directed verdict and judgment notwithstanding the verdict] applies to an appeal of the sufficiency of evidence . . . to support a judgment following a bench trial"). "As a general principle, the Massachusetts Rules of Civil Procedure are given the same construction as the cognate Federal rules." Sahin v. Sahin, 435 Mass. 396, 400 n.7 (2001).

The trial judge concluded that the language of the guaranty was ambiguous because cleanup costs were not defined and could encompass costs associated with a temporary or permanent solution. The judge found based on the evidence at trial that the parties intended to cover cleanup costs for a permanent solution to the contamination. This was a reasonable interpretation of the intentions of the parties.

At trial, Pierdinock testified that the "band aid" monitoring solution could not be permanent, as it required the abutting properties to accept an AUL, which the ice cream shop owner was unwilling to do. With the monitoring solution, no actual cleanup would occur. The sellers' expert also testified that current soil conditions "do not satisfy DEP standards." The judge was entitled to credit that testimony. See Prenaveau v. Prenaveau, 81 Mass. App. Ct. 479, 496 (2012) ("In a bench trial credibility is quintessentially the domain of the trial judge" [quotation and citation omitted]).

The judge's determination that the buyers were entitled to reimbursement up to the amount of the cost of option 3, the least expensive option, less the $35,000 they agreed to pay in

---

Accordingly, we conclude that a party is not required to make a posttrial motion to preserve a sufficiency challenge after a jury-waived trial where the presiding judge made detailed findings of fact.

the guaranty also was reasonable.  Looking to the remaining solutions, the judge found that option 1, double the price of the other two permanent options and nearly equivalent to the purchase price, was not within the reasonable expectations of the parties.  Option 3 was substantively identical to option 2 except that it required the buyers to accept an AUL on the property.  Given that the property was zoned for commercial purposes at the time the buyers purchased it and remained unavailable for residential development until 2017, long after the purchase, the evidence supported the judge's finding that the buyers did not have a reasonable expectation of developing the property for residential use and if they wanted to do so, they had to bear that cost themselves.  The award therefore appropriately reflected the intentions of the parties.[11]

---

[11] Packer maintains that the award is barred by quantum meruit, which he argues amounts to unjust enrichment.  See Sugarman & Sugarman, P.C. v. Shapiro, 102 Mass. App. Ct. 816, 820 n.7 (2023) ("quantum meruit is closely related to a claim for unjust enrichment").  In this three-sentence argument Packer fails to provide any legal support for the assertion that the doctrine of quantum meruit may be used as a defense to recovery for breach of contract.  Accordingly, the argument does not reach the level of appellate argument and we do not address it.  See Zora v. State Ethics Comm'n, 415 Mass. 640, 642 n.3 (1993) ("bald assertions of error, lacking legal argument and authority," do not "rise[] to the level of appellate argument").  We take the argument to mean that the amount the judge determined the buyers could be reimbursed was unjust.  Given that the award was based on a contract, we disagree.

2.  Buyers' cross appeal for additional costs of testing and evaluation.  The buyers argue (1) that they should be entitled to reimbursement for $102,917.89 paid to Pierdinock for his work assessing contamination on the property and developing remediation plans; and (2) that they were entitled to prejudgment interest from June 3, 2015, the date of the breach.  The judge did not award this element of damages in the judgment.  In her order denying the buyers' motion to amend the judgment, the judge again rejected reimbursement and prejudgment interest because she concluded that Pierdinock's expenses were not "cleanup costs" and there was insufficient evidence that the expenditures were "reasonable and necessary."

To the extent that the judge concluded that the costs that the buyers incurred in assessing the contamination at the property were not "cleanup costs" within the meaning of the contract, there is significant force to the buyers' argument that this was error.  However, the judge denied the buyers' claim for reimbursement of such costs on an alternative ground as well, namely, that the buyers failed to demonstrate that such costs were reasonable and necessary in circumstances where Packer already had paid his own LSP to conduct an assessment of the property.  We affirm on this basis.

"A finding is clearly erroneous when there is no evidence to support it, or when, 'although there is evidence to support

10

it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Adoption of Talik, 92 Mass. App. Ct. 367, 370 (2017), quoting Custody of Eleanor, 414 Mass. 795, 799 (1993).[12] On this record, we cannot conclude that the judge's finding that there was insufficient evidence to establish how Pierdinock's work did or did not duplicate Horter's work was clearly erroneous.

The trial judge heard testimony from both Pierdinock and Horter and reviewed the containment plans produced by both LSPs.[13] Pierdinock did not explain in his testimony how his work was different from Horter's. Pierdinock and Horter's testimony were in conflict over whether DEP rejected Horter's report. Horter completed reports for four phases out of five, including the phase two comprehensive site assessment and phase three

---

[12] The buyers' brief does not contain a concise statement of the applicable standard of review as required by Mass. R. A. P. 16 (a) (9) (B), as appearing in 481 Mass. 1628 (2019). Packer did not file a responsive brief as cross-appellee. The buyers appealed from both the judgment (so much as it denied costs incurred) and the order denying their motion to amend the judgment. We apply the standard of review for a factual finding under the judgment, which is more favorable. Cf. R.W. Granger & Sons, Inc. v. J & S Insulation, Inc., 435 Mass. 66, 79 (2001) (we review denial of motion to amend judgment for abuse of discretion).

[13] Pierdinock's plans are provided as part of the appellate record, but Horter's are not. Our review is accordingly limited.

remedial action plan.  See 310 Code Mass. Regs. §§ 40.0830 &

40.0850 (2024).  She also testified that some of the methods

that Pierdinock presented for cleanup were "pretty consistent

with some of the options that [she] presented in [her] reports."

While Horter did not address vapor intrusion in her reports,

where she presented the consistent remedial action options, we

cannot discern on this record the significance of this fact.

Moreover, the buyers do not include Pierdinock's bill (and many

other exhibits) in the appellate record to allow us to review it

to determine if it shows obvious non-duplication, such as

ongoing monitoring.  Without the full record before us and in

light of the substantial deference we accord the judge in a

jury-waived trial, we are not left with the "definite and firm

conviction that a mistake has been committed."[14]  Haskell v.

Versyss Liquidating Trust, 75 Mass. App. Ct. 120, 125 (2009).[15]

Judgment affirmed.

By the Court (Milkey, Henry & Desmond, JJ.[16]),

*Paul Little*

Clerk

Entered:  August 8, 2024.

_____

[14] It is the responsibility of the party appealing to provide an adequate record.  Spivey v. Neitlich, 59 Mass. App. Ct. 742, 744 (2003).

[15] Because we affirm the denial of LSP expenses, we need not reach the buyers' claim that they are entitled to prejudgment interest on that amount.

[16] The panelists are listed in order of seniority.

13