JAMES R. MASON vs. BETSY SHANLEY COLEMAN.

Middlesex. May 2, 2006. - July 10, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Divorce and Separation,* Child custody, Findings. *Practice, Civil,* Findings by judge. *Constitutional Law,* Right to travel. *Evidence,* Business record, Best and secondary, Authentication.

Discussion of the rights and responsibilities of parents with shared legal and physical custody of their children. [181-183]
This court concluded that where parents have joint physical and legal custody of children, "cause shown" pursuant to G. L. c. 208, § 30, which governs removal from the Commonwealth of children of divorced parents where one of the parents seeks to relocate without the consent of the other parent, means a showing that removal is in the "best interests" of the children, taking into account all the circumstances and weighing the appropriate factors. [183-186]
Where a mother who shared joint physical and legal custody of her children with their father sought to remove the children from the Commonwealth and the father refused to consent to the removal, a probate judge appropriately considered the best interests of the children and did not abuse her discretion in concluding that removal of the children pursuant to G. L. c. 208, § 30, would not serve their best interests [186-187]; moreover, the application of G. L. c. 208, § 30, did not violate the mother's right to freedom of movement pursuant to the Fifth and Fourteenth Amendments to the United States Constitution [187], and there was no reversible error in the admission of certain contested evidence at trial [187-188].

COMPLAINT for modification of foreign divorce filed in the Middlesex Division of the Probate and Family Court Department on June 29, 1999.

A second complaint for modification, filed on July 25, 2002, was heard by *Judith Nelson Dilday,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John T. Ouderkirk, Jr.* (*Carol A. Phinney* with him) for the defendant.

*Adam A. Rowe* for the plaintiff.

The following submitted briefs for amici curiae:

*Pauline Quirion, Fern Frolin, Warren Fitzgerald, & Martin Healy,* for Massachusetts Bar Association.

*Daniel B. Hogan* for Fathers and Families, Inc.

COWIN, J. The defendant, Betsy Shanley Coleman (mother), appeals from a judgment of the Probate and Family Court enjoining removal from the Commonwealth of children whose legal and physical custody she shares with the plaintiff, James R. Mason (father). General Laws c. 208, § 30, governs removal from the Commonwealth of children of divorced parents[1] where one of the parents seeks to relocate without the consent of the other parent. Removal of the children may be authorized by the court only "upon cause shown," meaning a showing that removal is in the children's best interests. *Rubin* v. *Rubin,* 370 Mass. 857 (1976). In *Yannas* v. *Frondistou-Yannas,* 395 Mass. 704, 711 (1985), we addressed removal where one parent had sole physical custody of the children. Today we consider the appropriate standard where parents have joint physical and legal custody. We conclude that in such a situation "cause shown" pursuant to G. L. c. 208, § 30, means a showing that removal is in the "best interests" of the children taking into account all the circumstances and weighing the factors as described below.

On the facts in this case, the judge appropriately considered the "best interests" of the children, and did not abuse her discretion in concluding that removal of the children would not serve their best interests. Refusal to authorize removal did not violate the mother's constitutional right to interstate travel, and there was no reversible error in the admission of certain contested evidence at trial. We affirm.[2]

*Background.* We summarize the facts found by the judge. The mother and father married in 1985. Two children were born of their marriage in 1992 and 1994, respectively, in New Hampshire. The parents divorced there in 1998. The judge found that during the marriage each parent took the part of a "primary caretaker"

---

[1]Certain children are excepted from the statute's provisions. The exceptions are not relevant here.

[2]We acknowledge the amicus briefs filed by Fathers and Families, Inc., and the Massachusetts Bar Association.

to the children.[3] After the marriage, by stipulation the father and mother entered into a joint physical and legal custody agreement that was incorporated into their divorce decree.[4,5] Under the agreement, the parents divided physical custody of the children approximately equally. The parties agreed to move within twenty-five miles of Chelmsford, and agreed that, in light of uncertainty as to where each would locate in Massachusetts, the children would attend school in the district of the mother's residence.

Some years passed, and each parent remarried. The mother and father obtained modification of the divorce decree by the Probate and Family Court as required by their changing needs. The father eventually relocated to Nashua, New Hampshire, approximately seventeen miles from Chelmsford. The mother objected privately but had little advance notice of the move and did not file suit to prevent it.

Weeks after the father gave notice of his plan to move to Nashua, the mother gave notice of her intent to relocate with the stepfather to Bristol, New Hampshire. The mother's parents live in Bristol; she planned to move into her parents' home with her family and eventually into her own home nearby.[6] The stepfather's children from a previous marriage (of whom the stepfather had joint custody) and his former wife were also to

---

[3]After being laid off from his job in February, 1992, the father worked part time and pursued a master's degree, enabling him to stay at home with the children for the first five years of the older child's life and the first three years of the younger child's life.

[4]The parties do not argue that the stipulations had a continuing effect separate from the divorce decree, cf. *Bercume* v. *Bercume*, 428 Mass. 635, 638-641 (1999) (addressing argument that divorce agreement bound parties in contract after merger with judgment), and they bring to our attention no New Hampshire authority to that effect.

[5]The stipulations did not expressly characterize the arrangement as "joint physical custody," but the parties' arguments assume that this was the relationship among the parents and children.

[6]The mother testified at trial that her parents had vacated their three-bedroom home and were living in a trailer on the property in anticipation of the family's arrival. The mother planned to occupy her parents' vacant home with her two children, the stepfather, his two children, and a newborn child with whom she was pregnant at the time of trial. The mother planned to accommodate the newborn child by dividing the large master bedroom in two.

move to Bristol, and the stepfather promised them that he would follow.

In 2002, testing revealed that the older child, then ten years old, had attention deficit disorder/attention hyperactivity disorder and related learning problems. Although kind and athletic, he lacked appropriate social skills and had trouble making friends. As a result of medication, the hard work of both parents, and a dedicated school staff, the child was able to succeed in fifth grade.

The Chelmsford school district has initiated a student accommodation plan for the child, and his middle school has established an "active and effective support system for him." The judge found that the child is making "great strides" both socially and educationally in his middle school.[7] The judge further found that, based on the State's standardized achievement tests, the Chelmsford school system is one of the better school systems in the Commonwealth, and that the Bristol, New Hampshire, middle school ranks below the State average on New Hampshire's standardized achievement test. The judge concluded that, in light of the disruptions to his developmental process that would be occasioned by the challenges of a new home, school, and sibling, and reduction in the time spent with the father, the move to New Hampshire would be "detrimental" to the older child's socialization and education.

In addition to the developmental issues, the judge found that the mother's children claimed one of them was inappropriately touched by the son of the mother's new husband. The allegation caused considerable acrimony between the mother and father. This tension left the child, who subsequently recanted and then reasserted his claim of abuse, feeling "scared about his role in the family" and "emotionally harmed" by his parents' ongoing conflict.

When the mother informed the father of her intention to move to New Hampshire, the father refused to consent to removal of the children from the Commonwealth and filed a complaint for

---

[7]The child attends a group organized by a guidance counsellor in his middle school that provides a safe setting for children to practice social skills. The judge found that the mother believed that the group was not beneficial to the child.

modification of the divorce decree in the Probate and Family Court seeking, among other things, sole physical custody and a temporary order enjoining the mother from removing the children from the Commonwealth. The mother counterclaimed for modification granting her sole physical custody and for a temporary order permitting the planned relocation to Bristol, New Hampshire.

A probate judge allowed the father's temporary order enjoining removal and other judges issued orders not material here. After some time, and a four-day trial, a different judge weighed the best interests of the children and determined that removal to New Hampshire in the manner requested by the mother was not in the best interests of the children and thus would not be authorized by the court. The judge found that Chelmsford schools were preferable to those of Bristol, particularly for the child with special needs; that uprooting the children would be detrimental to their interests; that the move would cause a reduction of the father's parenting time that would not be in the children's interests; that misconduct allegations against a step-sibling weighed against increased time in the mother's household; and that there was insufficient evidence of financial imperative to justify the mother's move to Bristol. The judge determined that the father's move to Nashua did not provide ground for the relief requested by the mother, and the judge did not award sole physical custody to either party, deciding instead to order continued shared legal and physical custody. The mother appealed,[8] and we transferred the case to this court on our own motion.

*Discussion.* True joint custody is divisible into two components: shared legal custody and shared physical custody. C.P. Kindregan, Jr., & M.L. Inker, Family Law and Practice § 47:1 at 395-396 (3d ed. 2002); Folberg, Joint Custody § 13.01[2], in 2 Child Custody & Visitation Law and Practice (2005), citing *Pascale* v. *Pascale*, 140 N.J. 583, 595-596 (1995) (Folberg). Shared legal custody carries "mutual responsibility and involvement by both parents in major decisions regarding the child's

---

[8]The notice of appeal was not limited, but the mother does not contest the correctness of the judge's decision to continue the shared physical custody arrangement.

welfare including matters of education, medical care and emotional, moral and religious development." G. L. c. 208, § 31. This contrasts to sole legal custody, which gives to only one parent these rights and responsibilities. *Id.* Shared physical custody contemplates that "a child shall have periods of residing with and being under the supervision of each parent . . . assur[ing] . . . frequent and continued contact with both parents." G. L. c. 208, § 31. This contrasts to sole physical custody which generally reflects that the children reside with only one parent "subject to reasonable visitation by the other parent." *Id.*

Although the General Laws state that there is no presumption "either in favor or against shared . . . custody at the time of trial on the merits," G. L. c. 208, § 31, such an arrangement is generally appropriate only if the parties demonstrate an ability and desire to cooperate amicably and communicate with one another to raise the children. Folberg, *supra* at § 13.06[1]; Gardner, Joint Custody is Not for Everyone 63, 66 (1982), reprinted in Joint Custody and Shared Parenting (J. Folberg, ed. 1984).

> "Joint custody is synonymous with joint decision making and a common desire to promote the children's best interests. 'It is understandable, therefore, that joint custody is encouraged primarily as a voluntary alternative for relatively stable, amicable parents behaving in mature civilized fashion,' *Braiman* v. *Braiman*, 44 N.Y.2d 584, 589-590 (1978) . . . . [I]n order to be effective 'joint custody requires . . . a willingness and ability to work together to reach results on major decisions in a manner similar to the way married couples make decisions.' Taussig & Carpenter, Joint Custody, 56 N.D. L. Rev. 223, 234 (1980)."

*Rolde* v. *Rolde*, 12 Mass. App. Ct. 398, 404-405 (1981).

Shared physical custody in particular carries with it substantial obligation for cooperation between the parents. Such an arrangement, by its nature, involves shared commitment to coordinate extensively a variety of the details of everyday life. E.E. Maccoby & R.H. Mnookin, Dividing the Child: Social and

Legal Dilemmas of Custody 217-227 (1992). Shared physical custody necessitates ongoing joint scheduling and provision for supervision and transportation of children between homes, schools, and youth activities. See, e.g., *id.* at 227 (discussing coordination by parents of rules for children in two households). It is thus incumbent on a parent who has been awarded joint physical custody to recognize that the viability of the endeavor is dependent on his or her ability and willingness to subordinate personal preferences to make the relationship work. While a joint physical custody agreement remains in effect, each parent necessarily surrenders a degree of prerogative in certain life decisions, e.g., choice of habitation, that may affect the feasibility of shared physical custody.

In this case, the mother wishes to remove the children from the Commonwealth, and the father, who shares legal and physical custody with her, has refused to consent. The mother has thus requested permission from the court to remove the children. General Laws c. 208, § 30, provides that "[a] minor child of divorced parents who is a native of or has resided five years within this [C]ommonwealth and over whose custody and maintenance a probate court has jurisdiction shall not . . . be removed out of this [C]ommonwealth . . . if under [the] age [of consent], without the consent of both parents, unless the court upon cause shown otherwise orders."[9] "The words 'upon cause shown' mean only that removal must be in the best interests of the child." *Yannas* v. *Frondistou-Yannas*, 395 Mass. 704, 711 (1985), citing *Rubin* v. *Rubin*, 370 Mass. 857 (1976). See *Welker* v. *Welker*, 325 Mass. 738, 746 (1950). "[T]he best interests of the child standard is one grounded in the particular

---

[9]The children were not born in the Commonwealth. Although the mother concedes that the children had lived in the Commonwealth for five years when judgment entered, it is notable that they had not resided in the Commonwealth for five years when the mother requested permission for removal. The mother notes this in her brief but fails to argue that the children were excluded from the scope of G. L. c. 208, § 30, at the time of judgment by reason of the duration of their residence. The mother also fails to argue that the relocation of the father and joint physical custodian to New Hampshire affected the applicability of § 30, or that the judge's order granting the father joint physical custody at his home in New Hampshire amounted to the permission necessary for removal by the mother pursuant to § 30. We express no opinion on these issues.

needs and circumstances of the individual child in question."
*Adoption of Vito*, 431 Mass. 550, 566 (2000). Assuming the
judge's findings are not clearly erroneous, we review her
determination of the best interests of the children only for an
abuse of discretion. *White* v. *Laingor*, 434 Mass. 64, 68 (2001),
quoting *Boulter-Hedley* v. *Boulter*, 429 Mass. 808, 811 (1999).

Where physical custody is shared, the "best interest" calculus
pertaining to removal is appreciably different from those situa-
tions that involve sole physical custody. American Law
Institute's (ALI) Principles of the Law of Family Dissolution:
Analysis and Recommendations § 2.17 (1), (4) (c) (2002).[10] See
*In re Marriage of Burgess*, 13 Cal. 4th 25, 40 n.12 (1996); *In re
Marriage of Francis*, 919 P.2d 776, 786 n.12 (Colo. 1996),
overruled in part on other grounds, *In re Marriage of Ciesluk*,
113 P.3d 135, 138 (Colo. 2005); *Baures* v. *Lewis*, 167 N.J. 91,
116 (2001). See also Richards, Children's Rights v. Parents'
Rights: A Proposed Solution to the Custodial Relocation
Conundrum, 29 N.M. L. Rev. 245, 264 (1999) (removal standard
should differentiate between cases involving primary residential
parent and those involving shared physical custody). Where
physical custody is shared, a judge's willingness to elevate one
parent's interest in relocating freely with the children is often
diminished. Terry, Relocation: Moving Forward, or Moving
Backward?, 15 J. Am. Acad. Matrimonial Law. 167, 212-213
(1998). No longer is the fortune of simply one custodial parent
so tightly interwoven with that of the child; both parents have

---

[10]The Principles of the Law of Family Dissolution § 2.17 (2002), as adopted
and promulgated by the American Law Institute, state in pertinent part:

"(1) The relocation of a parent constitutes a substantial change in
circumstances . . . only when the relocation significantly impairs either
parent's ability to exercise responsibilities the parent has been exercising or
attempting to exercise [under the judgement of divorce].

"  . . .

"(4) When a relocation constituting changed circumstances . . . renders it
impractical to maintain the same proportion of custodial responsibility to each
parent, the court should modify the parenting plan in accordance with the
child's best interests . . . in accordance with the following principles:

"  . . .

"(c) If neither parent has been exercising a clear majority of custodial
responsibility for the child, the court should modify the plan [e.g., enter an
order] in accordance with the child's best interests, taking into account all
relevant factors including the effects of the relocation on the child."

equal rights and responsibilities with respect to the children. The importance to the children of one parent's advantage in relocating outside the Commonwealth is greatly reduced. See Wallerstein, To Move or Not to Move: Psychological and Legal Considerations in the Relocation of Children Following Divorce, 30 Fam. L.Q. 305, 318 (1996) ("a parent with true joint physical custody proposing a move should be required to prove that [relocation] is in the best interest of the child, and not merely desired by the moving parent"). ALI Principles of the Law of Family Dissolution, *supra* at § 2.17 (1), (4) (c) (see note 10, *supra*), recently adopted by the ALI, supports the view that where "neither parent has been exercising a clear majority of custodial responsibility," the effect of the relocation on the child is a "relevant factor[]" in determining the child's best interests.

Where physical custody is shared and neither parent has a clear majority of custodial responsibility, the child's interests will typically "favor protection of the child's relationships with both parents because both are, in a real sense, primary to the child's development." Wallerstein, *supra* at 318. Distant relocation often impedes "frequent and continued contact" with the remaining joint custodian. See G. L. c. 208, § 31; Kindregan, Family Interests in Competition: Relocation and Visitation, 36 Suffolk U. L. Rev. 31, 36 (2002) (Kindregan). Cf. *In re Marriage of Seagondollar*, 139 Cal. App. 4th 1116, 1119 (2006) (removal from California "necessarily interferes with the other parent's ability to have frequent and continuing contact with" children).

Joint physical custody need not necessarily be impeded by relocation outside the Commonwealth. In some cases, distance between the parents may not greatly increase as a result of removal. In addition, there are significant differences in the individual tolerances of the custodians and the children. Wallerstein, *supra* at 320 ("Travel plans and arrangements should be tailored to the age, temperament, and wishes of the child"). Cf. Kindregan, *supra* at 53 (shuttling of children between households "by air, bus, or rail . . . extremely disruptive of the child's social life and development"). It is a question for a judge, taking into account all of the facts, whether an increase in travel time between households and schools brought about by

removal, and other burdens of distance, will significantly impair either parent's ability to exercise existing responsibilities, and ultimately whether removal is in a child's best interests.

We turn to the propriety of the judge's order denying permission for the mother to remove the children. The order is based on the judge's findings that the children's best interests would be negatively affected by this move. She made detailed written findings that their current schools were superior, that uprooting the children would be difficult for them, that the move would impair the father's parenting to the detriment of their interests, that potential misconduct by other siblings in the mother's household weighed against increased physical custody by the mother, and that any financial or other advantage[11] of the move to the mother was unclear. From this the judge determined that it was not in the children's best interests to be removed to Bristol.

The mother disagrees with the judge's weighing of the evidence, but "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Mass. R. Dom. Rel. P. 52 (a) (2006). We do not substitute our judgment of the evidence for the subsidiary findings of the judge absent clear error, see *G.E.B.* v. *S.R.W.*, 422 Mass. 158, 172 (1996), quoting *Commonwealth* v. *Willis*, 415 Mass. 814, 821-822 (1993) (Liacos, C.J., dissenting), or a "firm conviction that a mistake has been committed," *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 675 (1977). The mother advances several arguments with regard to the judge's findings of fact, none of which is persuasive. The judge was not required to adopt the opinions of a guardian ad litem, therapist, psychologist, school official, and other evaluator, each of which were different from those of the judge in certain particulars.[12] The judge's findings regarding financial matters are also not

---

[11]The advantages may include, for example, a greater support network or other nonfinancial considerations.

[12]For example, the guardian ad litem recommended that the mother be permitted to relocate to Bristol, New Hampshire, that the father's custody be concentrated on nonschool days, and that the mother should occasionally provide roundtrip transportation to a midway-point between the residences.

internally inconsistent or unsupported by evidence.[13] Her find-
ings regarding the situation are warranted by the evidence and,
based on them, her conclusion that removal is not in the
children's best interests is not an abuse of discretion.[14]

The mother contends in passing, without citation to directly
relevant judicial authority, that the judge's refusal to authorize
removal of the children from the Commonwealth offended her
right to freedom of movement pursuant to the Fifth and
Fourteenth Amendments to the United States Constitution. Cf.
*Saenz* v. *Roe*, 526 U.S. 489, 504-507 (1999) (unconstitutional
burden of restrictions on program eligibility). To the contrary,
G. L. c. 208, § 30, does not restrict the mother's right of travel,
only her right to remove children within the law's scope.[15] The
judge here determined that removal would clearly not serve the
best interests of the children. Thus, we are satisfied that the
mother's travel was not unconstitutionally impeded by the ap-
plication of G. L. c. 208, § 30. See *Gallup* v. *Gallup*, 271 Mass.
252, 257-258 (1930). See Kindregan, *supra* at 48 (right of par-
ent to relocate with child subject to State's power to promote
child's best interests).

The mother also maintains that it was erroneous to admit at
trial a reproduction of notes made by a school counsellor. She

---

[13]The mother argues that the judge failed to consider that the father worked
part time in the general vicinity of Bristol, New Hampshire. The mother
misreads the judge's findings of fact, which state that, "[a]s a ski instructor,
the [f]ather travels up to the ski area on Saturday and returns on Sunday [and
thus] [i]t would be difficult for [him] to have parenting time with his children
during the ski season, if his parenting time were to be reduced primarily to
weekends."

[14]Because of our decision, it is unnecessary for us to consider whether the
parties were bound by the "change of address" portion of the divorce decree
to remain in the vicinity of Chelmsford.

[15]Other courts have reached similar results. See, e.g., *Clark* v. *Atkins*, 489
N.E.2d 90, 100 (Ind. Ct. App. 1986); *Carter* v. *Schilb*, 877 S.W.2d 665, 668
(Mo. Ct. App. 1994); *Bates* v. *Tesar*, 81 S.W.3d 411, 437 (Tex. Ct. App.
2002); *Lane* v. *Schenck*, 158 Vt. 489, 494 (1992). Some courts have concluded
that there is no violation of a parent's right to travel interstate if a restriction
or burden serves the children's best interests. See *In re Marriage of Ciesluk*,
113 P.3d 135, 146-148 (Colo. 2005); *Braun* v. *Headley*, 131 Md. App. 588,
608-609 (2000), cert. denied, 531 U.S. 1191 (2001); *LaChapelle* v. *Mitten*,
607 N.W.2d 151, 163-164 (Minn. Ct. App.), cert. denied, 531 U.S. 1011
(2000); *Custody of D.M.G.*, 287 Mont. 120, 129 (1998); *Jaramillo* v. *Jaramillo*,
113 N.M. 57, 64 (1991); *Watt* v. *Watt*, 971 P.2d 608, 615-616 (Wyo. 1999).

argues that the copied notes were inadmissible because they were not proper business records, were not the best evidence available, and were not authenticated by affidavit. See G. L. c. 233, §§ 79E, 79J. The counsellor who made the notes testified that she was the one who recorded them and testified as well to much of their content. Although their admission may not have complied precisely with the rules of evidence, other evidence was properly admitted that clearly supports the judge's decision. We are satisfied "with substantial confidence that the error would not have made a material difference." *DeJesus* v. *Yogel*, 404 Mass. 44, 49 (1989).

*Conclusion.* For the foregoing reasons, the judgment of the Probate and Family Court is affirmed.

*So ordered.*