Murphy *v.* Murphy.

IDANIA ELVIRA MURPHY *vs.* DENNIS GEORGE MURPHY.

No. 11-P-1032.

Hampden. March 9, 2012. - July 17, 2012.

Present: COHEN, GREEN, & GRAHAM, JJ.

*Divorce and Separation,* Child custody, Findings, Child support, Attorney's fees. *Evidence,* Child custody proceeding. *Minor,* Custody. *Parent and Child,* Custody of minor, Child support.

In a divorce proceeding, the Probate and Family Court judge applied the correct standard in determining whether the wife, who was the primary caretaker and who was granted sole physical custody of the couple's child in the judgment of divorce nisi, could move with the child to New York [189-190]; further, the record supported the judge's determinations that there existed a "real advantage" for the wife in moving to New York [190-191], and that the best interests of the child favored removal from the Commonwealth [191-193].

In a divorce proceeding, the Probate and Family Court judge did not abuse his discretion in awarding the wife sole physical custody, where the judge's finding that the wife was the primary caretaker was not clearly erroneous. [193-194]

In a divorce proceeding, a Probate and Family Court judge erred in ordering the husband to pay the child's routine uninsured medical expenses without explaining why he did not require the wife to bear responsibility for the first $250, as required by the child support guidelines. [194]

A Probate and Family Court judge did not abuse his discretion in ordering the husband in a divorce proceeding to pay the wife's attorney's fees in connection with the divorce. [195]

COMPLAINT for divorce filed in the Hampden Division of the Probate and Family Court Department on January 6, 2010.

The case was heard by *David G. Sacks,* J., and motions to stay and to alter or amend judgment were also heard by him.

*James Mitchell Smith* for the husband.

*Helena S. Friedman* for the wife.

*Mary A. Samberg* for the child.

GRAHAM, J. Dennis George Murphy (husband) appeals from a

judgment of divorce nisi dated November 29, 2010, as amended on December 30, 2010, which awarded the parties shared legal custody over their daughter, but awarded Idania Elvira Murphy (wife) sole physical custody. The judge also found good cause to allow the wife to remove the child from the Commonwealth pursuant to G. L. c. 208, § 30, in order to move to New York to live with her sister. In so finding, the judge employed the standard articulated by the Supreme Judicial Court in *Yannas* v. *Frondistou-Yannas*, 395 Mass. 704 (1985) (*Yannas*). Finally, the judge ordered the husband to pay all future routine uninsured medical expenses for the parties' daughter and to pay $4,000 of the wife's attorney's fees.[1]

On appeal, the husband contends that the judge erred in concluding that the *Yannas* standard was the applicable one; that the judge erred in finding a "real advantage" for the wife in moving to New York; that the judge's findings concerning the best interests of the child were inadequate to support his removal determination; that the judge abused his discretion in awarding the wife sole physical custody; that the judge's order concerning payment of routine uninsured medical expenses conflicts with § II(G)(3) of the child support guidelines; and that the judge abused his discretion in awarding attorney's fees. We vacate so much of the judgment as ordered the husband to pay one hundred percent of the child's routine uninsured medical expenses, and we remand for further proceedings. In all other respects, we affirm.

*Background.* We recount the undisputed facts based on the trial judge's findings, supplemented by the trial testimony of the parties. The parties met in June, 2007. In the months leading up to their meeting, the husband was employed as a dairy delivery-man and the wife was employed as a hairdresser. The wife is originally from Honduras, and she resided in New York before the marriage, where her sister and several other family members also lived. The parties married in November, 2007, and resided in the husband's parents' second home in Chester.

In December, 2008, the wife gave birth to the parties' daughter.

[1]The judge had previously ordered the husband to pay $5,000 of the wife's attorney's fees; he was thus required to pay a total of $9,000 of her attorney's fees.

The wife acted as the child's primary caretaker, although the husband played a substantial role in providing care for the child. During the first year of the child's life, the wife was not employed outside the home. The husband attempted to continue his business as a dairy deliveryman but, due to a decline in his customer base, took up work at the Department of Transportation and at Sears Roebuck & Co. The wife testified that she felt lonely and isolated in Massachusetts, and relations between the parties subsequently deteriorated.

The wife ultimately filed for divorce on the grounds of irretrievable breakdown of the marriage in January, 2010. From January through May of 2010, the parties continued to live together and share responsibility for their daughter. Thereafter, in late May, 2010, the parties agreed to a shared custody arrangement whereby the child would remain in the home, with the husband staying with her and assuming responsibility for her from Friday evening through Monday morning, and the wife doing so for the remainder of the week. That custody arrangement took effect by temporary order of the Probate and Family Court.

A trial on the wife's complaint for divorce was held on October 21 and 22 and November 1, 2010. At trial, the judge heard testimony concerning, among other things, the wife's desire to move with the child to New York. The judge found that the wife had a sister in New York with whom she intended to live and who would assist in providing child care, and that the wife had other family members in the nearby area. In addition, the wife explained that she had a job opportunity working as a hairdresser in a nearby part of Connecticut. The husband objected to the move. The judge found that the wife had no motive to use the move as a means to deprive the husband of contact with the child. He then entered a judgment of divorce nisi dated November 29, 2010, which included a visitation plan allowing the husband to see his daughter every other weekend and during certain vacations and summer periods. After further hearing on the husband's motions to stay and to alter or amend the judgment, the judge issued an order dated December 30, 2010, denying the motion to stay, and allowing in part and denying in part the motion to alter or amend. This appeal followed.

*Discussion.* 1. *The judge's removal determination.* (a) *Application of the* Yannas *standard.* The husband contends that the judge erred in applying the *Yannas* standard because, under the parties' temporary custody arrangement, which took effect in late May, 2010, the parties shared physical custody of their daughter. Accordingly, the husband argues, the proper standard for assessing the wife's request to remove the child from the Commonwealth was that articulated by the Supreme Judicial Court in *Mason* v. *Coleman*, 447 Mass. 177 (2006) (*Mason*). We disagree.

General Laws c. 208, § 30, as amended by St. 1986, c. 462, § 9, provides, in pertinent part, that

> "[a] minor child of divorced parents who is a native of . . . this commonwealth and over whose custody and maintenance a probate court has jurisdiction shall not, if of suitable age to signify his consent, be removed out of this commonwealth without such consent, or, if under that age, without the consent of both parents, unless the court upon cause shown otherwise orders."[2]

In this context, "[t]he words 'upon cause shown' mean only that removal must be in the best interests of the child." *Yannas*, *supra* at 711.

The *Yannas* and *Mason* standards both focus on the best interests of the child, but differ regarding the proper framework within which to evaluate those best interests. See *Prenaveau* v. *Prenaveau*, 75 Mass. App. Ct. 131, 139 (2009). Where the parent seeking removal has been awarded sole physical custody, "the interests of the child[] are 'so interwoven with the well-being of the custodial parent,' that a demonstration that the move provides him or her palpable benefits (a 'real advantage') helps to justify the uprooting of the child[]." *Ibid.*, quoting from *Yannas*, *supra* at 710-711. "Where the parent seeking to move has not been given sole physical custody, then — as *Mason* teaches — the calculus is appreciably different: the importance to the child[] of the benefits of the move to that parent become[s] 'greatly reduced,' and it therefore becomes more difficult for

---

[2]As noted above, the husband objected to removal.

the parent to justify the uprooting of the child." *Id.* at 140, quoting from *Mason, supra* at 184-185.

"How a custody arrangement is categorically defined will trigger which of the two models is implicated." *Altomare* v. *Altomare,* 77 Mass. App. Ct. 601, 605 (2010). Nevertheless, "even where the party seeking to relocate is characterized as the sole physical custodian, it is appropriate that the decisional calculus consider the functional responsibilities and involvement of each parent." *Ibid.* Moreover, "nothing in our case law requires that either analysis be employed solely where the parents have adopted a particular custodial label." *Woodside* v. *Woodside,* 79 Mass. App. Ct. 713, 717 (2011).

Here, in the judgment of divorce nisi, the judge awarded the wife sole physical custody of the parties' child. Additionally, based on the evidence presented at trial concerning the parties' division of childcare responsibilities during the marriage, the judge concluded that the wife was the primary caretaker. Thus, even though the parties shared physical custody between May and November of 2010, *Yannas* was the appropriate standard. See *Wakefield* v. *Hegarty,* 67 Mass. App. Ct. 772, 776-777 (2006) (no abuse of discretion in applying the "real advantage" test where the judge found that the mother was the child's primary caretaker). See also *Woodside, supra* at 718.

(b) *"Real advantage" to the wife.* The husband asserts that the judge's conclusion that there exists a "real advantage" for the wife in moving to New York is insufficiently substantiated by his findings. While we understand the husband's concern to remain close to his daughter, we are not persuaded that the claimed benefits of the move are insufficient to establish a "real advantage."

Establishing a "real advantage" means establishing "a good, sincere reason for wanting to remove to another jurisdiction." *Yannas, supra* at 711. In assessing the claimed advantage, the judge should consider "the soundness of the reason for moving, and the presence or absence of a motive to deprive the noncustodial parent of reasonable visitation." *Ibid.*

The wife testified that she felt isolated and unhappy living in Massachusetts. In addition, the wife, who initially lived in New York upon arriving in the United States from Honduras, wishes

to move back to New York to live with her sister and to be near other family members who live in the area. She also has an employment opportunity as a hairdresser awaiting her in a nearby town in Connecticut. Furthermore, the trial judge found that she had no motive to deprive the husband of contact with their daughter, and that she recognized the importance of the child spending time with her father. Taken together, we conclude that these facts are sufficient to show the sort of "real advantage" contemplated in *Yannas.* See *Wakefield, supra* at 775-777.

(c) *Best interests of the child.* The husband also argues that, even if *Yannas* provides the correct standard, the trial judge erred in determining, based on the evidence before him, that the best interests of the child favor removal from the Commonwealth. He notes the close, loving relationship between himself and his daughter; his substantial role in providing care for his daughter since her birth; and the diminished contact between them that would necessarily result from allowing the wife to move with the child to New York. Although we appreciate the weight of the husband's contentions, we disagree that the facts he cites establish that the judge erred in evaluating the best interests of the child.

In removal cases, "[e]very person, parent and child, has an interest to be considered," and "[t]he judicial safeguard of those interests lies in careful and clear fact-finding." *Yannas, supra* at 712. When assessing the best interests of the child under the *Yannas* analysis to determine "the extent to which moving or not moving will affect the emotional, physical, or developmental needs of the child," *id.* at 711, the Supreme Judicial Court has examined such factors as the financial, emotional, and social advantages associated with the proposed move; the availability of continued contact with both parents; the relative strengths of the local schools; and the home environment into which the children would be moving.[3] See *Yannas, supra* at 712. See also *Wakefield,* 67 Mass. App. Ct. at 777-778 (similar analysis).[4] In *Woodside, supra* at 719-720, we also looked at the proximity of family members who could assist in

---

[3] As explained above, the relative weight of these factors varies with whether the analysis proceeds under the *Yannas* or *Mason* standard. See *Prenaveau,* 75 Mass. App. Ct. at 139-140.

[4] We also examine other factors, such as the child's express wishes regarding

caretaking and the deleterious effects of increased travel. See *Dickenson* v. *Cogswell,* 66 Mass. App. Ct. 442, 449-450 (2006) (high cost of flights from California to Massachusetts detrimental to the child's economic best interests). In addition, with very young children, the availability and relative quality of daycare or preschool facilities in each area may be included among the factors the judge considers. Finally, the judge should consider the strength of the child's relationships with each parent, custodial and noncustodial.[5] These considerations "must be considered collectively," *Yannas, supra* at 712, and require the judge to weigh the benefits to the custodial parent from the move against the loss of contact with the noncustodial parent and any attendant increases in travel time for the child. See, e.g., *Dickenson,* 66 Mass. App. Ct. at 449-450; *Wakefield,* 67 Mass. App. Ct. at 777-778; *Woodside,* 79 Mass. App. Ct. at 719-720. See also *Katzman* v. *Healy,* 77 Mass. App. Ct. 589, 595-596 (2010), quoting from *Pizzino* v. *Miller,* 67 Mass. App. Ct. 865, 870 (2006) ("Under *Yannas,* the advantages and disadvantages of moving or not moving to the parent who has sole physical custody are a 'significant factor in the [best interests of the child] equation' ").

Here, the judge considered the relevant factors. Given the child's close relationship with her mother, who has acted as her primary caretaker; the wife's ongoing role as sole physical custodian of the child; the advantages to the wife of the proposed move; the availability of family members in New York to assist in providing care to the child; and the existence of a workable visitation plan that will allow the husband meaningful access to

---

where to live, although those wishes "must be treated with caution." See *Hale* v. *Hale,* 12 Mass. App. Ct. 812, 820 (1981). Here, as the child is very young (at the time of trial, just under two years old), certain considerations are not applicable in assessing the child's interests. To the extent the child is capable of forming them, she has no express preferences regarding the move. Nor does she have any special educational or other developmental needs.

[5]The child was represented by counsel throughout these proceedings. In his findings, the judge explained that "counsel's role was not to advocate her client's wishes, but to present evidence as to her best interests," which counsel accomplished by "trial advocacy and submission of proposed findings." The judge stated that the child's "voice . . . supported the custody/visitation/ relocation decision."

and time with the child,[6] we conclude that the judge did not err in concluding that the best interests of the child favored moving. See *Woodside, supra.*

2. *Custody award.* The husband also contends that the judge abused his discretion in awarding the wife sole physical custody because his findings are inadequate to support that custody determination. In support of this argument, the husband contends that the judge's findings regarding the wife's role as primary caretaker are clearly erroneous. Moreover, he contends that the wife's role as primary caretaker is inadequate by itself to sustain awarding her sole physical custody. We are not persuaded by this argument.

"The best interests of a child is the overarching principle that governs custody disputes in the Commonwealth." *Charara* v. *Yatim,* 78 Mass. App. Ct. 325, 334 (2010). A custody determination "presents the trial judge 'with a classic example of a discretionary decision.' " *Youmans* v. *Ramos,* 429 Mass. 774, 787 (1999), quoting from *Adoption of a Minor (No. 2),* 367 Mass. 684, 688 (1975). "The judge is afforded considerable freedom to identify pertinent factors in assessing the welfare of the child and weigh them as [he] sees fit." *Smith* v. *McDonald,* 458 Mass. 540, 547 (2010). A custody determination requires a "realistic, commonsense judgment," which takes account of the fact that the "determination of custody is a choice among limited alternatives, all of which, invariably, have imperfections" and evaluates them in light of the "well-being of the child and [her] future development." *B.B.V.* v. *B.S.V.,* 68 Mass. App. Ct. 12, 18 (2006), quoting from *Fort* v. *Fort,* 12 Mass. App. Ct. 411, 418 (1981). In view of the trial judge's superior position to observe witnesses and weigh evidence, we review only for abuse of discretion. *Smith, supra.*

The judge's finding that the wife was the primary caretaker is not clearly erroneous. There is ample support for it in the record in the form of evidence regarding the division of caretaking responsibilities during the marriage.[7] See *Martin* v. *Martin,* 70 Mass. App. Ct. 547, 549 (2007) ("A finding is 'clearly errone-

---

[6] As noted, the husband will have visits with the child every other weekend, as well as on certain vacations and summer periods.

[7] That the division of childcare responsibilities was, in part, the result of the

ous' when, although there is evidence to support it, the review-ing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" [citations omitted]). We also conclude that the judge's custody determina-tion was adequately supported by the wife's warm relationship with the child and the fact that the wife acted as the child's primary caretaker. See *El Chaar* v. *Chehab*, 78 Mass. App. Ct. 501, 506 (2010) ("constants" in determining the best interests of a child in the context of a custody determination include "consideration of which parent has been the primary caretaker of, and formed the strongest bonds with, the child"). See also Kindregan & Inker, Family Law and Practice § 47:12, at 440 (3d ed. 2002) ("The fact that one parent has successfully been the primary care parent in the past obviously speaks to the issue of that party's continued ability to exercise care of the child in a custodial situation"). Contrast *R.H.* v. *B.F.*, 39 Mass. App. Ct. 29, 42-43 (1995), *S.C.*, *Custody of Vaughn*, 422 Mass. 590 (1996).

3. *The award concerning routine uninsured medical expenses.* The husband contends that the judge's award concerning pay-ment of the child's routine uninsured medical expenses is in er-ror because it conflicts with § II(G)(3) of the child support guidelines, and the judge did not explain why he chose to devi-ate from the guidelines. We agree.

The child support guidelines in effect at the time of the par-ties' divorce, provide, in pertinent part: "The Recipient [of child support payments] *shall be* responsible for payment of the first $250 each year in combined routine uninsured health and dental/vision expenses for all children covered by this order" (emphasis added). Child Support Guidelines § II(G)(3) (2009). Despite this mandatory language, the judge simply ordered the husband to pay one hundred percent of the child's routine uninsured medical expenses without requiring that the wife bear responsibility for the first $250. His findings neither mention the payment of the first $250 nor explain the deviation. Accord-ingly, we must vacate and remand so much of the judgment as concerns the payment of routine uninsured medical expenses.

husband's work schedule does not suggest that the judge's findings are not properly supported by the record.

4. *Attorney's fees.* Finally, the husband argues that the judge abused his discretion in ordering him to pay $4,000 of the wife's attorney's fees in connection with the divorce. We disagree.

The judge has broad discretion concerning the award of attorney's fees in a divorce case, and "[s]uch an award is 'presumed to be right and ordinarily ought not to be disturbed.' " *Moriarty* v. *Stone*, 41 Mass. App. Ct. 151, 159 (1996), quoting from *Ross* v. *Ross*, 385 Mass. 30, 39 (1982). Here, there was a substantial income disparity between the parties, and the judge, having conducted the trial, was provided with ample opportunity to observe the wife's counsel and assess the reasonableness of her fees. See *Downey* v. *Downey*, 55 Mass. App. Ct. 812, 819 (2002) (stating factors for assessing the reasonableness of attorney's fees). We therefore conclude that the judge did not abuse his discretion in the award of attorney's fees.

*Conclusion.* We vacate so much of the judgment as concerns the payment of routine uninsured medical expenses and remand the matter to provide the judge an opportunity either to make findings to explain his deviation from § II(G)(3) of the child support guidelines or to further amend the judgment to comply with § II(G)(3). In the interim, the existing provision in the judgment concerning payment of routine uninsured medical expenses shall remain in effect as a temporary order.[8] In all other respects, the judgment of divorce nisi, as amended, is affirmed.

*So ordered.*

---

[8]"Any proceedings necessary to enforce payment are to be brought in the Probate [and Family] Court." *Kennedy* v. *Kennedy*, 400 Mass. 272, 276 (1987).