NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-700

JAMES W. RAPPAPORT, JR.

vs.

ELIZABETH T. RAPPAPORT.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff father, James W. Rappaport, Jr., appeals from a Probate and Family Court judgment of divorce nisi entered after trial, which permitted the defendant mother, Elizabeth T. Rappaport, to remove the parties' two children from Massachusetts to Wisconsin. The father argues that (1) the Yannas-Mason binary framework governing removal of minor children from the Commonwealth should be replaced by a uniform "best interests of the child" standard; (2) the judge erred in applying the Yannas "real advantage" test rather than the Mason "best interests" test; and (3) the judge abused her discretion in concluding that removal is in the best interests of the children. See Mason v. Coleman, 447 Mass. 177, 184-186 (2006);

Yannas v. Frondistou-Yannas, 395 Mass. 704, 711-712 (1985).  We affirm.

Background.[1]  The parties married in 2007 and had two children:  a son who was thirteen years old at the time of trial and daughter who was ten years old at the time of trial.  Both children had special needs.

While in kindergarten, the son was diagnosed with attention deficit hyperactivity disorder (ADHD).  Throughout elementary school, the son struggled with serious mental health concerns and required multiple hospital evaluations.  After his second evaluation, the son received inpatient care that focused on stabilization.  After his release, the son continued to struggle with disruptive and harmful behavior.  As a result, his public elementary school did not allow him to return.  The family began to receive specialized home services, and, at some point, the son was able to enroll in a therapeutic school that specialized in helping children cope with serious social, emotional, and behavioral challenges.  At the time of trial, the son was still at high risk for harmful behavior if not properly supported.

---

[1] We draw the facts from the judge's comprehensive amended findings of fact, conclusions of law, and rationale.  We note that the judge incorporated the parties' stipulation of uncontested facts into her findings.

School staff noted that both parents participated in discussions about the son's treatment and were supportive of his progress.

The daughter was diagnosed with ADHD when she was in kindergarten. In the same year, she received an individualized education program (IEP) that she continued to need and benefit from at the time of trial. The daughter also received therapeutic services. At the time of trial, she was doing well in school, making friends, and participating in singing lessons every week.

Throughout the marriage, the mother was primarily responsible for the care of the children while the father earned income to support the family. Although the mother was initially employed when the son was born, she ceased working to stay home and care for the children. The mother arranged both children's IEP services and therapeutic services. The father originally had limited participation in the children's day-to-day activities because of his job, but once he changed employers in 2016, he participated more in the daily care of the children.

In May 2020, the father informed the mother that he intended to leave their marriage. In response the mother

3

immediately took the children to Wisconsin to stay with her parents and seek the support of her extended family.[2]

The father filed a complaint for divorce in the Probate and Family Court in May 2020. In June 2020, the father also filed an emergency motion to compel the mother to return the children to Massachusetts. In the same month, a Probate and Family Court judge issued a temporary order instructing the mother to return the children to Massachusetts. The judge appointed a guardian ad litem (GAL) shortly thereafter to make recommendations on the best interests of the children in relation to custody, the parenting plan, and removal. The GAL filed her report in March 2021.

The mother filed a counterclaim for divorce, seeking to remove the children to Wisconsin pursuant to G. L. c. 208, § 30. She wanted to be surrounded and supported by her extended family that lived in Wisconsin, seek better employment opportunities in a well-established family business, and gain more financial independence because the cost of living was significantly lower than in Massachusetts. As the trial judge found, there was no evidence that the mother wanted to move to Wisconsin to punish the father or limit his contact with the children.

_____

[2] For context, we note that the father told the mother he was romantically involved with a close friend of the mother and "intend[ed] to further his relationship with [her]."

4

In July 2020, the judge issued a temporary custody order, declaring that the parties shall share legal custody of the children and that the mother shall have primary physical custody, subject to the father's parenting time. In June 2021, the case was transferred to a new judge (trial judge) who, in December 2021, appointed a second GAL to evaluate the best interests of the children.[3] The new GAL filed her report in May 2022. Both GALs recommended that the mother be allowed to remove the children to Wisconsin and that removal was in their best interests.[4]

After three days of trial in June 2022, the trial judge issued the judgment of divorce and relevant procedural history, findings of fact, conclusions of law and rationale and further findings. Among other things, the trial judge allowed the mother's request to remove the children to Wisconsin, granted the parties joint legal custody of the children, and set out the father's parenting schedule. The father appeals.

---

[3] The first GAL became a Probate and Family Court staff member after she submitted her report. The second GAL was appointed to consider the parenting plan in the best interests of the children.

[4] Both GALs were attorneys, and their reports were very comprehensive. The first was sixty-three pages long and the second was seventy-six pages long. Both reports itemized the people they interviewed and the documents they reviewed. The second GAL testified at trial. The trial judge found both GALs credible.

Discussion.  1.  Legal standards.  "General Laws c. 208,

§ 30, governs removal from the Commonwealth of children of

divorced parents where one parent seeks to relocate without the

consent of the other parent."  Miller v. Miller, 478 Mass. 642,

646-647 (2018).[5]  "[W]hen deciding whether removal of a child

out-of-State should be permitted, the particular criteria depend

on whether physical custody of the child is sole or shared."

E.K. v. S.C., 97 Mass. App. Ct. 403, 410 (2020), citing Miller,

supra at 643.  "If the party seeking removal is the sole

physical custodian of the children, then the judge must consider

the request under a two-prong test set forth in Yannas."

Altomare v. Altomare, 77 Mass. App. Ct. 601, 603 (2010).  The

first prong is known as the real advantage test.  "To satisfy

the real advantage test, the custodial parent must demonstrate

'a good, sincere reason for wanting to remove to another

jurisdiction' and 'the soundness of the reason for moving, and

the . . . absence of a motive to deprive the noncustodial parent

of reasonable visitation.'"  Id. at 604, quoting Yannas, 395

Mass. at 711.  If the real advantage test is satisfied, then the

---

[5] General Laws c. 208, § 30, provides in relevant part:
"[a] minor child of divorced parents who is a native of or has
resided five years within this commonwealth . . . shall
not . . . be removed out of this commonwealth . . . without the
consent of both parents, unless the court upon cause shown
otherwise orders."  "Upon cause shown" means that removal must
be in the best interests of the child.  See Miller, 478 Mass. at
647, citing Yannas, 395 Mass. at 711.

judge must consider whether removal is in the best interests of the children, which is the court's "paramount concern." Id. at 710-712.

However, "[i]f the party seeking removal shares physical custody with the other parent," then "[t]he advantage to the moving parent becomes merely a relevant factor in the over-all inquiry of what is in the [children]'s best interests." Altomare, 77 Mass. App. Ct. at 604-605, quoting Wakefield v. Hegarty, 67 Mass. App. Ct. 772, 776 (2006). This is the so-called Mason analysis, set forth in Mason, 447 Mass. at 184-185. Regardless of which test applies, we review an order granting a request to remove children from the Commonwealth for "'abuse of discretion or other error of law,' accepting the judge's findings unless shown to be clearly erroneous." E.K., 97 Mass. App. Ct. at 411-412, quoting Murray v. Super, 87 Mass. App. Ct. 146, 148 (2015). See, e.g., Mason, supra at 184; Yannas, 395 Mass. at 712.

2. Analysis. a. The Yannas-Mason framework. The father first argues that we should replace the Yannas-Mason framework with a single, uniform, best interests of the child standard. We decline the father's request because we have "no power to alter, overrule or decline to follow the holding of cases the

Supreme Judicial Court has decided." Commonwealth v. Dube, 59 Mass. App. Ct. 476, 485-486 (2003).[6]

The father next disputes the trial judge's decision to apply the Yannas real advantage test. He asserts that despite the temporary custody order granting the mother primary physical custody, the trial judge was required to perform "a factual inquiry into the functional responsibilities and involvement of each parent to determine the parties' custody arrangement, regardless of custodial labels." In fact, the judge need perform the functional analysis only if "no prior custody order existed at the time of the proceedings." E.K., 97 Mass. App. Ct. at 410. Therefore, the fact that the temporary custody order in effect granted the mother "primary physical custody of the minor children subject to [the] father's parenting time" obviated any need to perform a functional analysis.

Nevertheless, the trial judge did conduct a functional analysis in support of her conclusion that the Yannas real advantage test applied. As the trial judge found, "[t]hroughout the marriage, [the mother] was primarily responsible for caring for the children, while [the father] primarily earned income to support the family." Before the father switched jobs, his

---

[6] The Supreme Judicial Court denied the father's application for direct appellate review on October 1, 2024.

8

participation in the day-to-day activities of the children was "limited."  Although the father spent more time with the children after he changed employers in 2016, the mother continued to play the primary role in setting up the children's IEP and therapeutic services, preparing the children's lunches for school, and being primarily responsible for transportation. The judge could reasonably conclude that the father's "assist[ing]" in transportation and meal preparation did not alter the fundamental nature of the parties' parenting contributions.  After separation, although the father had parenting time with both children every week, the children spent the vast majority of their time at the mother's home.  For all of these reasons, the trial judge reasonably concluded that, after the parties separated, the mother continued to "ha[ve] primary physical custody."  Based on that subsidiary finding, the trial judge reasonably ruled that, "[w]hile [the father] has regular, weekly parenting time, it does not rise to the level of a shared physical custody arrangement which would warrant an analysis under Mason v. Coleman, 447 Mass. 177 (2006)."

In sum, the record establishes that the trial judge conducted a careful factual inquiry into the parties' functional parental responsibilities.  Likewise, the record supports the trial judge's conclusion that the mother had primary physical

9

custody of the children, warranting application of the Yannas real advantage test.[7]

b. Removal of the children to Wisconsin. We discern no abuse of discretion in the trial judge's conclusion that the move to Wisconsin was in the best interests of the children. Both GALs submitted in-depth reports as exhibits, and both concluded that removal to Wisconsin was in the best interests of the children. The second GAL testified at trial and confirmed that she had extensively considered both children's separate interests and that she still felt, at the time of trial, that removal was in the best interests of the children. Further, an education expert testified at trial and authored a report admitted at trial concluding that the children's IEPs and specific needs could still be satisfied in Wisconsin. Indeed, the education expert testified that there were two private therapeutic schools located relatively close to the town where mother planned to live that use the same therapeutic model as the son's school in Massachusetts, and that this would likely ease his transition to Wisconsin. The judge found the testimony of the second GAL and the education expert credible. Based on

---

[7] Moreover, regardless of which test applied, Yannas or Mason, the trial judge made clear that she would have come to the same conclusion. She stated, "[u]nder either standard, removal is in the children's best interests."

10

the testimony and report of the education expert, the trial judge concluded that "there is a real advantage to the children attending the [Wisconsin town] school system as compared to the [Massachusetts town] school system."

The exhibits at trial included the children's school records, the reports from the GALs and the expert, and reports from the son's treatment facilities.  The trial judge appropriately considered and credited these reports.  See Ardizoni v. Raymond, 40 Mass. App. Ct. 734, 738 (1996) ("Discretion allows the judge, when determining the best interests of children, to consider the widest range of permissible evidence, including the reports and testimony of a court appointed investigator or G.A.L. . . .").

We conclude that the record amply supported the trial judge's conclusion that the move to Wisconsin "would greatly improve the quality of [the son's] life because he will be surrounded by a large network of family who support him, and he will be afforded an opportunity to start 'fresh' without fear of his peers knowing his mental health journey."  The judge also properly weighed the evidence showing that, although the daughter enjoyed living in Massachusetts, she would also benefit from the move to Wisconsin because she would be surrounded by family.  The judge was permitted to credit the expert's testimony on both the advantages of the Wisconsin education

11

system and the State's mental health department and weigh that testimony in considering the advantages to the children's education.  Finally, the judge properly weighed the father's ability to connect with the children and found that the father and the children maintained a connection online, such as by playing video games, and that ultimately, the father had more flexibility and resources available to him to discover possible alternative means of connection.[8]  All of these findings were reasonable and supported by the record.  None were clearly erroneous.  See Mason, 447 Mass. at 186 ("[F]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.  We do not substitute our judgment of the evidence for the subsidiary findings of the

---

[8] We note that, at oral argument, the parties reported that they were able to work cooperatively to modify the terms of the custody arrangement in accordance with the children's wishes. We applaud and encourage these efforts.

12

judge absent clear error or a firm conviction that a mistake has been made" [quotations and citations omitted]).

Judgment of divorce nisi
   affirmed.

By the Court (Neyman,
   Ditkoff & Wood, JJ.[9]),

Clerk

Entered:  April 3, 2025.

---

[9] The panelists are listed in order of seniority.

13