NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1101

R.K.

vs.

R.M.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff and defendant-in-counterclaim (mother) appeals from a corrected modification judgment entered in the underlying divorce action.  The main argument she raises is that the Probate and Family Court judge erred in awarding primary physical custody of the parties' minor child to the defendant and plaintiff-in-counterclaim (father).  We affirm.[1]

Background.  The parties were divorced in May 2014.  They have one child together, who was born in March 2012.  The parties' separation agreement, which merged with the divorce

_____

[1] The mother also appealed from an order of a single justice of this court denying her motion to stay the corrected modification judgment pending appeal, and the two appeals were consolidated.  She raises no separate argument as to the single justice's order, however, and so we need not address it.

judgment, provided that the mother would have physical custody of the child and that the parties would share legal custody.

In September 2015 the father filed a complaint for modification seeking physical custody of the child and termination of the father's child-support obligation to the mother. This complaint resulted in a stipulation, signed in August 2017, in which the parties agreed, among other things, that the father would have physical custody of the child from August 2017 until June 2018, that the child would live with the father in Virginia starting August 14, 2017, and that the parties would continue to share legal custody. A modification judgment incorporating the stipulation entered in November 2017.

In January 2018 the father filed a petition for custody of the child in the Virginia Juvenile and Domestic Relations District Court (Virginia trial court). A few months later, the father, then an active member of the military, was deployed overseas for approximately one year. While he was deployed, the Virginia trial court entered a temporary order granting the mother physical custody of the child, and in July 2018 the child returned to live with the mother in Massachusetts.

In January 2019 the Virginia trial court issued a final judgment granting the father physical custody of the child. The mother appealed to the Albemarle County Circuit Court (Virginia

2

appellate court).  In July 2019, while the mother's appeal was pending and after she returned the child to the father in Virginia, she filed the underlying complaint for modification seeking physical custody of the child and child support. Although the judge initially dismissed the complaint on the ground that Virginia had subject-matter jurisdiction, he vacated the dismissal in September 2019 after the Virginia appellate court allowed the mother's motion to dismiss the Virginia action for lack of subject-matter jurisdiction.

In October 2019 the father moved with the child to Colorado.  Although the mother agreed at the time that the child should live with the father while the mother worked to secure stable housing, the father did not tell the mother that he and the child had moved to Colorado.  The judge too was not aware that the father had removed the child to Colorado until late 2020, when a pretrial hearing was held on the mother's complaint for modification.  Following that hearing the judge issued an order in December 2020 in which he concluded that the father had failed to make an appropriate request to remove the child to Colorado and that, as a matter of law, the child had to be returned to his home state of Massachusetts pending final resolution of the mother's complaint.  The child then returned to the mother's custody on or around December 31, 2020.

3

In July 2021 the father filed a counterclaim seeking physical custody of the child so that the child could live with the father, his wife, and their two children in Colorado. Trial on the mother's complaint and the father's counterclaim was held over four days in July, September, and November 2023. Both parties testified, as did several other witnesses, and twenty-three exhibits were entered in evidence. The judge then issued a detailed written decision concluding, among other things, that a material and substantial change in circumstances warranting modification had occurred and that it would be in the child's best interests to live with the father in Colorado. A corrected modification judgment entered in accordance with the judge's decision on June 14, 2024, nunc pro tunc to June 12, 2024. Relevant to this appeal, the judgment provides that the father shall have primary physical custody of the child and that the parties shall have joint legal custody, "but if the parties are unable to agree on educational, medical, religious, or extra-curricular activity decisions, [the] [f]ather shall have final say" so long as he gives the mother seventy-two hours "to add her input on the decision."

Additional facts are set out below as they become relevant to our analysis.

4

Discussion. The mother argues on appeal that the judge erred by failing to make an express finding of a material change in circumstances; that for numerous reasons the judge erred in finding that it would be in the child's best interests to live with the father in Colorado; and that the judge erred in purporting to maintain joint legal custody while giving the father the "final say" if the parties are unable to agree. We address these arguments in turn.

1. Material and substantial change in circumstances. Under G. L. c. 208, § 28, a judge may modify an "earlier judgment as to the care and custody of . . . minor children . . . provided that the [judge] finds that a material and substantial change in the circumstances of the parties has occurred and the judgment of modification is necessary in the best interests of the children." Here, the judge expressly found that, since entry of the modification judgment in November 2017, "there ha[d] been significant changes in the lives of the parties and [the child]," including the father's move to Colorado, retirement from active duty, and new employment in "a nondeployable position," the mother's "housing instability," and the child's "many emotional, mental, and physical challenges." The judge also made an express finding that modification of the November 2017 judgment would be in the child's best interests.

5

Thus, contrary to the mother's argument, the judge made the findings required by the statute.

We disagree with the mother's assertion that the judge erred by failing to "explicitly identify what changed since the December 2020 order."  As an initial matter, the relevant point in time for purposes of determining whether a material and substantial change occurred is November 2017, i.e., when the "earlier judgment as to the care and custody of" the child entered.  G. L. c. 208, § 28.  The December 2020 order was not incorporated into a judgment, but was a temporary order issued pending trial on the merits.  In any event, as discussed below, the judge made detailed findings showing how the child's circumstances had changed since he returned to the mother's care pursuant to the December 2020 order.  Thus, even were we to consider only what happened after that date, we would conclude that the judge's findings still demonstrate that a material and substantial change had occurred.

2.  Best interests of child.  "The determination of which parent will promote a child's best interests rests within the discretion of the judge . . . [whose] findings in a custody case must stand unless they are plainly wrong" (quotations and citations omitted).  Custody of Kali, 439 Mass. 834, 845 (2003).  In this case the judge concluded that it would be in the child's

best interests to live with the father because the evidence showed that the mother failed to act in the child's best interests during the time he was in the mother's custody pursuant to the December 2020 order. This conclusion is supported by detailed factual findings, unchallenged by the mother on appeal, establishing that the mother regularly failed to give the child his prescribed medications for attention deficit hyperactivity disorder, anxiety, and depression, subjecting him to "cycle[s]" of dysregulation, involvement by the Department of Children and Families (DCF), and hospitalizations. For example, in December 2021, after school staff isolated the child to keep him from running away, he tried to harm himself and was admitted to a hospital for one week. On another occasion in May 2023, the child destroyed objects in the school guidance counselor's office, ran down the halls, sprayed cleaning chemicals into the faces of school staff, and then ran down the street. The child was suspended as a result of this incident. In addition, the child had forty-five absences during the 2022-2023 school year and struggled academically. Although the mother repeatedly claimed to DCF that the child became dysregulated because of visits with the father, the judge found that his dysregulation was in fact caused by the mother's use of physical discipline, the child's "further fear of [the]

7

[m]other's actions after he speaks with DCF," and the mother's failure to give the child his medications.

Based on these uncontested findings, the judge justifiably concluded that the child's best interests would be served if the father had physical custody of him. In contrast to the mother's inadequate care of the child, the judge found that the father and his wife "provided [the child] with all he needs to thrive" while he was in their custody and would continue to do so. The judge thus determined that it would be in the child's best interests for him to move to Colorado to live with the father and his family. This was well within the judge's discretion. See Custody of Kali, 439 Mass. at 845.

In arguing otherwise, the mother raises a number of challenges to the judge's weighing and crediting of the evidence. For example, she claims that the judge did not adequately consider evidence that the father committed acts of "coercive control," such as moving to Colorado without telling the mother and thereby isolating the child from her for one year. She further claims that the judge's best interests determination is contrary to evidence that she provided the child with stability for nine years and obtained professional services for him immediately upon his return to Massachusetts from Colorado. It was the judge's role, however, to assess the

8

credibility of the witnesses, weigh the evidence, and determine the best interests of the child. See Custody of Kali, 439 Mass. at 845-848; E.K. v. S.C., 97 Mass. App. Ct. 403, 412-413 (2020). The judge's findings reflect that he considered all the relevant circumstances before him, citing evidence that was positive to the mother as well as evidence that was negative to the father, and we see no basis to disturb his determination. To the extent the mother argues that the judge erred in permitting removal of the child from Massachusetts, we are unpersuaded. The judge found that the father's purpose for moving to Colorado was not to interfere with the mother's relationship with the child, that the father has roots in his Colorado community, and that there is a "real advantage" to his living there. These findings were sufficient to support the order of removal. See E.K., supra at 410-411 (before transferring physical custody to out-of-State parent, judge "must find that the intent of the move was not to interfere with the in-State parent's relationship with the child, and was not designed to establish a basis to request a change in physical custody" and that move provided "real advantage" to out-of-State parent).

3. Legal custody. Neither party sought a modification regarding legal custody of the child. The judge thus maintained the parties' joint legal custody but, noting their "extensive

9

history of disagreements," concluded that it would be in the child's best interests for the father to have the "final say" in the event of future disagreements.  The mother argues on appeal that this was an abuse of discretion because giving the father the "final say" renders her custodial status meaningless.  We disagree.  The judge's order of joint legal custody gives the mother the right to be involved in major decisions regarding the child's welfare.  See Mason v. Coleman, 447 Mass. 177, 181-182 (2006).  The father thus cannot act unilaterally, as the mother claims.  Even as to matters where there is disagreement, the judge's order prevents the father from making any decisions without giving the mother at least seventy-two hours to provide her input.  We discern no abuse of discretion.

Conclusion.  The corrected modification judgment entered June 14, 2024, is affirmed.  The order of the single justice

10

dated August 16, 2024, denying the mother's motion for a stay pending appeal is affirmed.[2]

So ordered.

By the Court (Henry, Shin & Toone, JJ.[3]),

*Paul Little*

Clerk

Entered: April 24, 2026.

---

[2] The father's request for appellate attorney's fees is denied, as he fails to specify a basis therefor.

[3] The panelists are listed in order of seniority.